# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1009

ALFONSO MEDRANO, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    April 23, 2007    )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Thomas E. Sullivan*, all of Washington, D.C., for the appellee.

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed a concurring opinion.

LANCE, *Judge*: The appellant, Alfonso Medrano, appeals, through counsel, an April 29, 2004, decision of the Board of Veterans' Appeals (Board) that denied entitlement to service connection for depression and post-traumatic stress disorder (PTSD).  Record (R.) at 1-13.  For the reasons that follow, the Court will affirm the April 2004 Board decision.

## I. FACTS

On August 1, 2000, the appellant claimed entitlement to disability compensation for PTSD. R. at 25-28.  In April 2001, the appellant was provided with a letter that advised him of the new notice provisions contained in the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3(a), 114 Stat. 2096 (codified, in part, at 38 U.S.C. § 5103).  R. at 135.  On July 31, 2001,

a VA regional office (RO) denied the appellant's claim. R. at 144-46. The appellant filed a timely Notice of Disagreement (NOD), which the RO also construed as a new and separate claim for entitlement to service connection for depression. R. at 151. The RO denied the claim for depression in an October 2002 decision. R. at 154.

The appellant, through counsel, filed an NOD with respect to the October 2002 denial of service connection for depression. R. at 160-61. Counsel for the appellant argued that the VCAA required the RO to attempt to obtain service records from the U.S. Army. R. at 160. In addition, counsel for the appellant asserted that the "VCAA specifically requires the RO to advise the veteran of the evidence necessary to substantiate his claim, and to further advise him what part of that evidence the veteran is to provide and what part will be the responsibility of VA. No such VCAA notification has been given." R. at 161. The appellant was provided separate Statements of the Case (SOC) for each of the two claims on appeal. R. at 165, 174.

The appellant appealed his claims to the Board. Counsel for the appellant argued in a January 2003 letter:

> Although the RO does cite and describe the [VCAA] as controlling law, it fails to apply that law. The veteran has provided his lay account of an "incident" in service, and his lay testimony is consistent with the places and circumstances of service. He has been diagnosed with depression by his private doctor. Under these circumstances, VCAA requires a medical examination and/or opinion to connect the veteran's depression with his active duty.

R. at 188.

In February 2003, the RO transmitted a Supplemental Statement of the Case (SSOC) for both claims in response to additional medical evidence submitted by the appellant, as well as the appellant's January 2003 Substantive Appeal. R. at 252, 188. The appellant, through counsel, continued to disagree with the RO's adjudication of his claims and requested that the RO "acquit its duties under VCAA, and . . . provide his attorney with copies of all documents obtained or secured, including a copy of the RO's [compensation and pension] referral sheet and the examination report." R. at 257. In fact, the appellant's counsel corresponded with the RO on six other occasions in an effort to raise new arguments or suggest additional development under the VCAA. R. at 266, 275, 278, 285, 292, 295. The RO responded with three additional SSOCs, which rejected counsel's

arguments and readjudicated the claims where new evidence was provided. R. at 271, 281, 288. On December 4, 2003, the RO transmitted a second VCAA letter to the appellant that pertained to the appellant's service connection claims for PTSD and depression. R. at 297, Supplemental (Supp.) R. at 298A-298B. Counsel for the appellant acknowledged receipt of the VCAA letter and asked the following question:

> As I understand it, the RO has requested copies of the veteran's military records and there are no such records available. On page four of the letter, you set forth what the evidence must show to support the claim, among these to show there was an event in service which caused injury or disease. In view of the lack of military records, may the veteran establish this element of the claim by and through his lay evidence alone? Please review and advise.

R. at 301. The RO informed counsel for the appellant that a veteran could testify as to observed events, but could not render a medical diagnosis or opinion. R. at 304. Upon receipt of this response, counsel for the appellant indicated to the RO that the appellant had no further evidence to submit. R. at 303.

In the decision on appeal, the Board found that the April 2001 VCAA letter satisfied the Secretary's notice obligations with respect to the PTSD claim. However, the Board found that the December 2003 notice letter for the depression claim was not provided until after the initial, unfavorable RO decision. Nonetheless, citing 38 U.S.C. § 7261(b)(2) and *Conway v. Principi*, 353 F.3d 1369 (Fed. Cir. 2004), the Board determined that error to be harmless. The Board reasoned that submissions from the appellant and his attorney demonstrated actual knowledge of the evidence necessary to substantiate the depression claim. R. at 4.

On appeal to the Court, the appellant argues only that the Secretary failed to provide adequate notice prior to the initial, adverse adjudication of each claim. Appellant's Brief (Br.) at 4-5. In other words, he does not argue that the content of the notice was deficient, only that the notice was not provided in a timely manner. Briefing in this matter was completed on March 4, 2005, prior to the Court's issuance of *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005) (*Mayfield I*). Pursuant to the appellant's unopposed motion of May 2, 2005, both parties were provided the opportunity to submit supplemental briefing "regarding the prejudicial nature of . . . VA's error." Appellant's Unopposed Motion for Supplemental Briefing at 2. In the appellant's supplemental brief, he argues that the

3

content of the April 2001 and December 2003 letters was deficient in several respects. He contends further that he was prejudiced by the Secretary's failure to issue timely and compliant notice.

## II. ANALYSIS

### A. VCAA Notice

Pursuant to the VCAA, upon receipt of a complete or substantially complete application for benefits and prior to an initial unfavorable decision on a claim by an agency of original jurisdiction, the Secretary is required to inform the claimant of the information and evidence not of record that (1) is necessary to substantiate the claim, (2) the Secretary will seek to obtain, if any, and (3) the claimant is expected to provide, if any, and to request that the claimant provide any evidence in his possession that pertains to the claim. *See* 38 U.S.C. § 5103(a); *Pelegrini v. Principi*, 18 Vet.App. 112, 119, 121 (2004); *Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002); 38 C.F.R. § 3.159(b) (2006). Under the statute and the corresponding regulation, VA is to provide affirmative notification to the claimant prior to the initial adjudication of the claim. *Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) (*Mayfield II*). However, VA may cure timing defects by issuing a fully compliant VCAA notification and then readjudicating the claim. *Id*. at 1333-34.

Whether VA communications satisfy the statutory and regulatory notification requirements is a "substantially factual determination" that VA must make in the first instance. *Id*. at 1335. The Court reviews the Board's factual findings under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Court may not substitute its judgment for the factual determinations of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance. *See id.*

As an initial matter, the Court notes that it will not entertain the arguments regarding errors in the content of the VCAA notice raised for the first time in the appellant's supplemental brief, as the appellant's own motion for supplemental briefing was limited to "the prejudicial nature" of the VCAA error alleged in his initial brief. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999)

4

("improper or late presentation of an issue or argument . . . ordinarily should not be considered"), *aff'g sub nom. Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief); *Tubianosa v. Derwinski*, 3 Vet.App. 181, 184 (1992) (The Secretary "should have developed and presented *all* of his arguments in his initial pleading") (emphasis in original); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."). The appellant raised a single allegation of error in his initial brief–a timing-of-notice error. *See infra* at 3. The Board determined that the content of the notice letters provided for each claim complied with the statutory requirements, and the appellant has not properly challenged that finding. Therefore, the only issue before the Court is whether the Secretary failed to provide timely VCAA notice, and if so, the effect of any such error.

In the case of the appellant's PTSD claim, notice was provided by the Secretary within one year of the date his claim was filed, and four months before the initial RO adjudication of the claim. R. at 135. The appellant's argument that the Secretary provided untimely notice for development of the PTSD claim is unpersuasive. The Secretary's issuance of the April 2001 VCAA notice letter was in accordance with the timing requirements of the statute and subsequent caselaw. *See* 38 U.S.C. § 5103(a); *Mayfield II*, 444 F.3d at 1333.

However, the Board made a separate determination that the December 2003 notice provided to the appellant after the initial adjudication of the appellant's depression claim, was not timely. R. at 4. The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority. *See* 38 U.S.C. § 7261(a)(4) (as amended by the Veterans Benefits Act of 2002, Pub.L. No. 107-330, § 401, 116 Stat. 2820, 2832 (Dec. 6, 2002) (providing for Court to reverse or set aside only findings of fact "adverse to the claimant")); *Hines v. Principi*, 18 Vet.App. 227, 239 (2004); *Roberson v. Principi*, 17 Vet.App. 135, 139 (2003) (per curiam order). Having found that notice was not provided until after the initial unfavorable decision by the RO, the Board then concluded that, "[a]ssuming for the sake of argument that pre-decision notice is required, any defect in this regard is harmless error in this case." R. at 4. Because the Board found the VCAA

5

notice to be untimely, the Court is left to determine the effect of such untimely notice and the Board's finding of no prejudice.

### B. Board's Ability to Assess Whether an Error is Prejudicial

Although Congress has not specifically mandated that the Board assess prejudicial error, the Court has recently held that the Board is not prohibited from considering "the doctrine of harmless error" in the VCAA-notice context. *Mayfield v. Nicholson*, 20 Vet.App. 537, 543 (2006) (*Mayfield III*). The question then becomes, what standard does the Court employ in reviewing the Board's determination of whether an error by the Secretary constitutes prejudicial error? As explained below, we will give no deference to a Board finding regarding the application of the doctrine of harmless error.

Section 7261 of title 38, U.S. Code, governs the scope of the Court's review of Board decisions. The scope of the Court's review varies depending on whether a veteran is challenging a conclusion of law or finding of fact. The Court reviews questions of law de novo without any deference to the Board's conclusions. 38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000). On the other hand, the Court gives deference to the Board's findings of fact, provided they are not clearly erroneous. 38 U.S.C. § 7261(a)(4); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

The Court has not had occasion to consider whether "taking due account of the rule of prejudicial error" constitutes a finding of fact or conclusion of law. *Compare Overton v. Nicholson*, 20 Vet.App. 427, 438 (2006) (To determine whether the appellant was prejudiced by any notice error, the Court "must review all of the evidence that presumably was reviewed by the Board at the time of its decision."), *and Thompson v. Gober*, 14 Vet.App. 187, 191 (2000) ("One of the most common instances where the Court is required to find facts in the first instance is on the issue of nonprejudicial error.") (Holdaway, J., dissenting) *with Curry v. Brown*, 7 Vet.App. 59, 66 (1994) (holding that the Board's determination of whether a veteran would be prejudiced by its deciding a question or questions not addressed by the RO is a question of law subject to de novo review). The Court need not consume time and paper to participate in the semantic game of labeling prejudicial

6

error determinations.[1] It is enough to say that Congress has imparted to the Court the ultimate responsibility for determining whether an error below was prejudicial. 38 U.S.C. § 7261(b)(2); *see also Conway*, 353 F.3d at 1375. "[I]n those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." *Miller v. Fenton*, 474 U.S. 104, 114 (1985). In this instance, Congress *has* spoken. "In making the determinations under [38 U.S.C. § 7261(a)] of this section, *the Court shall* take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b) (emphasis added); *see also Gilda Indus. v. U.S.*, 446 F.3d 1271, 1282 (Fed. Cir. 2006) ("Statutory instructions using the term 'shall' are ordinarily treated as mandatory." (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935))). Deferring to any Board determinations in the context of prejudicial error would be tantamount to ceding the authority that Congress has vested in this Court; reassignment of the Court's statutory obligation is something we are not inclined, nor authorized, to do. Accordingly, the Court will review Board determinations of prejudicial error de novo, in other words, without any deference to the Board.

C. The Court's Assessment of the Effect of the Timing-of-Notice Error

The appellant asserts that, because he was first provided VCAA notice regarding his depression claim after the RO had already denied it, he was deprived of the opportunity to meaningfully participate in that initial adjudication. The Secretary contends that the VCAA error

---

[1] The Court is generally precluded from finding facts in the first instance. *See* 38 U.S.C. § 7261(c). *But see Barrett v. Nicholson*, 466 F.3d 1038, 1043 (Fed. Cir. 2006) (affirming Court's development of facts to resolve contested jurisdictional issues). If the assessment of prejudicial error was truly an exercise in factfinding, the Court would be precluded from such an inquiry. Instead, the Court believes the reasoning of Judge Holdaway's dissent in *Thompson* has merit. *See Thompson*, 14 Vet.App. at 191 (noting that determining whether an error is prejudicial to the appellant "can only be done by looking at the error in the context of the entire record and making a qualitative judgment that the error did or did not have an impact on the decision"). Congress's prohibition of de novo factfinding and its mandate that the Court take due account of the rule of prejudicial error, two parts of the same statute, must both be given full effect. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992).

7

was not prejudicial because the appellant, through counsel, indicated that he had no further evidence to submit upon receipt of the December 2003 VCAA letter. Secretary's Response at 4.

In *Mayfield II*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that the language of the VCAA statute required affirmative notification prior to the initial adjudication. *Id*. at 1333. However, VA may cure timing defects through compliance with proper remedial measures, namely the issuance of compliant notice followed by the readjudication of the claim. *See id.* at 1333-34 ("The timing problem, however, was cured by the Board's remand following the enactment of the VCAA for a new VCAA notification followed by readjudication of Mrs. Mayfield's claim."); *see Prickett v. Nicholson*, 20 Vet.App. 370, 376 (2006). In *Mayfield III*, the Court held that compliant notice followed by readjudication of the claim in the form of an SSOC effectively cured the underlying VCAA timing error as contemplated by the Federal Circuit in *Mayfield II*. *Mayfield III*, 20 Vet.App. at 541-42. Similarly, the Court in *Prickett* held that a VCAA timing error could be cured by issuance of compliant notice and a subsequent SOC. *Prickett*, 20 Vet.App. at 377. The Court reasoned that the claim adjudication process should not start from scratch following remedial notice because the Secretary's regulations provided for an alternative (and more efficient) means of adjudication in the form of an SOC. *Id*. at 377. Although the question was not presented in that case, the *Prickett* Court suggested that, where a claimant fails to submit or identify for VA procurement additional evidence following compliant notice, the matter would not have to be remanded for readjudication by the RO. *Id*. at 377 n.2.

The Court finds footnote two in *Prickett* instructive. Under the Secretary's regulations, an SSOC is issued when the RO receives additional pertinent evidence subsequent to the most recent SOC or SSOC. 38 C.F.R. § 19.31(b)(1) (2006). In *Prickett*, the veteran actually submitted additional evidence after the initial adjudication and in response to the untimely VCAA letter. Readjudication was necessary in light of the new evidence, and the procedural posture was such that an SOC was the prescribed format. *See Prickett*, 20 Vet.App. at 377; *see also* 38 C.F.R. § 19.28 (2006) (SOC must be issued upon receipt of an NOD); 38 C.F.R. § 19.31(a) (SSOC is prepared only after an SOC has already been issued.).

Here, the appellant did not submit additional evidence subsequent to the remedial notice. To the contrary, after receiving postadjudicatory, content-compliant VCAA notice, he affirmatively indicated through counsel that he had no further evidence to submit.[2]

In this case, the purpose of the VCAA was satisfied when the Secretary provided the appellant with (1) content-compliant VCAA notice and (2) the opportunity for readjudication after the submission of additional evidence and (3) the appellant's attorney indicated to the RO that the appellant had no further evidence to submit. In the absence of additional evidence, which the appellant indicated he did not possess–nor did he identify evidence in VA's possession for VA to obtain– returning this claim to the RO would have resulted in a readjudication of the matter by the RO on exactly the same evidence and law previously considered by the RO. The appellant would gain nothing were the Court to require this; there is simply no reason to disturb the most recent RO adjudication of record prior to issuance of the remedial and compliant notice. *See Soyini v. Derwinski*, 1 Vet. App. 540, 546 (1991) (stating that "strict adherence [to the law] does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case. Such adherence would result in this Court's unnecessarily imposing additional burdens on the B[oard] and [the Secretary] with no benefit flowing to the veteran").

In sum, we hold that, although VA did not strictly comply with the Federal Circuit's holding in *Mayfield II* that a timing-of-notice error could be cured by providing compliant notice, *followed by a readjudication*, such an error was not prejudicial in this case. If, after VA provides content-compliant VCAA notice–albeit in an untimely manner–and a claimant, who is represented by an attorney, subsequently informs VA that there is no further evidence to submit, the failure by the RO

---

[2] The Court finds the nature of the appellant's representation before the RO and the Board to be a factor in this case. *See Andrews v. Nicholson,* 421 F.3d 1278, 1283 (Fed. Cir. 2005) (noting that the requirement that a veteran's motion to revise based on clear and unmistakable error be read sympathetically "does not apply to pleadings filed by counsel"); *Overton v. Nicholson*, 20 Vet.App. 427, 438 (2006) (noting that representation by counsel at the agency level "is a factor that must be considered when determining whether that appellant has been prejudiced by any notice error"). Here, the appellant secured representation by counsel after the October 2002 RO decision. R. at 163. And, during the course of his representation, counsel for the appellant made repeated requests for evidentiary development pursuant to provisions of the VCAA and raised various arguments on the merits of the appellant's claims.

to conduct a subsequent readjudication is not prejudicial because the result of such a readjudication would be no different than the previous adjudication.[3] *See Mayfield I*, 19 Vet.App. at 116 (stating that "a demonstration by one party that an error did not affect the outcome of a case would establish that there was or could be no prejudice.") (emphasis omitted). In such a case, a remand would be utterly useless.

### III. CONCLUSION

Accordingly, the April 29, 2004, decision on appeal is AFFIRMED.

SCHOELEN, *Judge*, concurring: I wholeheartedly join the Court's opinion in full except for footnote two. I do not find any significance in the nature of Mr. Medrano's representation as it relates to the timing-of-notice error, except that the Court must apply the rule that an attorney's actions and communications are directly attributable to his client. *Overton v. Nicholson*, 20 Vet.App. 427, 438-39 (2006).

---

[3] This is not to say that a claimant's statement that he had nothing further to submit could cure a *content*-of-notice error. In such a case, without VA having fully informed the claimant of the information or evidence necessary to substantiate the claim, a claimant's assertion that he or she had nothing further to submit would be based on incomplete information and would not indicate that the claimant was not prejudiced by the content-of-notice error. *See Janssen v. Principi*, 15 Vet.App. 370, 373 (2001) (per curiam) (holding that to waive a procedural right a represented appellant "must first possess a right, he must have knowledge of that right, and he must intend, voluntarily and freely, to relinquish or surrender that right").