# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1515

JOSEPH HARVEY, JR., APPELLANT,

v.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 29, 2017)                    (Decided February 7, 2018)

*David Anaise*, of Tucson, Arizona, was on the brief for the appellant.

*Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Thomas E. Sullivan*, Deputy Chief Counsel; and *Ronen Z. Morris*, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and SCHOELEN and BARTLEY, *Judges*.

BARTLEY, *Judge*: Veteran Joseph Harvey, Jr., appeals through counsel a January 14, 2016, Board of Veterans' Appeals (Board) decision denying entitlement to service connection for sleep apnea, as secondary to a service-connected psychiatric disability, and reopening a claim for service connection for tinnitus. Record (R.) at 2-45.[1] This appeal is timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The primary issue before the Court is whether part of a legal brief submitted to the Board by Mr. Harvey's attorney, who is also a medical doctor, constituted a medical opinion that the Board was

---

[1] The Board denied (1) reopening claims of entitlement to service connection for bilateral hearing loss and headaches; (2) entitlement to service connection for hypertension, including as secondary to a service-connected psychiatric disability; and (3) entitlement to an initial compensable disability rating for plantar hyperkeratosis, previously diagnosed as xerosis, of both feet, and psoriasis of the feet; and (4) dismissed a claim for entitlement to service connection for post-traumatic stress disorder (PTSD). R. at 44-45. Because Mr. Harvey has not challenged these portions of the Board decision, the appeal as to those matters will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued on appeal and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same). The Board also reopened and granted entitlement to service connection for nerve damage to bilateral upper and lower extremities as due to Gulf War illness and granted an increased evaluation for depressive disorder to 70%. R. at 44-45. As these findings are favorable to the veteran, the Court will not disturb them. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority.").

required to address. For the reasons that follow, the Court will affirm the January 2016 Board decision.

## I. FACTS

Mr. Harvey served on active duty in the U.S. Marine Corps from June 1988 to June 1992. R. at 4, 906.[2] He was diagnosed with obstructive sleep apnea in October 2006. R. at 22, 24. In July 2008 and January 2009, he filed claims for service connection for tinnitus, depressive disorder, and sleep apnea. R. at 8, 32. In February 2009, a VA regional office (RO) granted service connection for depressive disorder. R. at 32. In August 2009, a VA examiner opined that sleep apnea was not caused by or a result of service, noting that service treatment records (STRs) did not show that sleep apnea symptoms were reported in service. *See* R. at 24. In September 2009, the RO denied service connection for, inter alia, sleep apnea and tinnitus. *See* R. at 8. In April 2011, the veteran sought to reopen these claims. *See id*.

In April 2013, a VA audiologic examiner opined that Mr. Harvey's hearing loss and tinnitus, which the examiner found to be a symptom of hearing loss, were less likely due to military noise exposure and more likely due to civilian noise exposure, age, or another etiology. R. at 911, 918, 920. The examiner explained that tinnitus was not reported on the veteran's service medical records (SMRs) and could not be claimed as secondary to acoustic trauma because there was no hearing loss at separation. R. at 918.

In April 2013, a VA examiner opined that Mr. Harvey's sleep apnea was not directly related to service, noting that the October 2006 onset occurred many years after separation, and was not proximately due to his service-connected depressive disorder, citing a review of medical literature. *See* R. at 24. The examiner noted that a major cause of sleep apnea was weight gain and that the veteran weighed 155 pounds in service and 255 pounds in March 2013. *See id*. In April 2013, the RO reopened the sleep apnea claim, but denied service connection, and found no new and material evidence sufficient to reopen the tinnitus claim. *See* R. at 8-9.

On December 4, 2014, Mr. Harvey's representative, Mr. David Anaise, submitted what he categorized as an "appeal brief" to the St. Petersburg RO and asserted that "we appeal the rating

---

[2] The Court notes that Mr. Harvey's opening brief failed to include a statement of "the facts relevant to the issues, with appropriate page references to the record before the agency" as required by the Rules of Practice and Procedure. U.S. VET. APP. Rule 28(a)(4)(i); *see* Appellant's Brief (Br.).

decision of April 17, 2013." R. at 82-89. Mr. Anaise is a licensed medical doctor, licensed attorney, and accredited VA representative. R. at 82. The letterhead of this submission stated "David Anaise, MD, JD," and included an email address for "anaisedavid.office," and he began the submission by identifying himself as an accredited attorney representing Mr. Harvey "in his claim for VA benefits." R. at 82.[3] The signature block of the submission identified "David Anaise, MD JD Attorney at Law" as the author. R. at 89.

In this submission, Mr. Anaise presented argument for an increased evaluation to 70% for depressive disorder claimed as PTSD and depression. R. at 82. Mr. Anaise detailed favorable medical evidence from various examinations and evaluations of record, which he included as enumerated enclosures with the submission; cited this Court's caselaw and a Board decision concerning another veteran to support his argument that a higher evaluation was warranted; identified symptoms that were indicative of a higher evaluation; and concluded that "we argue that a 70% disability rating for PTSD is most appropriate." R. at 82-85.

The next page of Mr. Anaise's December 2014 submission is entitled "**Obstructive Sleep Apnea**" and the header stated "Appeal Brief" and "Page 5 of 8." R. at 86 (emphasis in original). Mr. Anaise commenced this section of the document as follows:

> Veteran has been diagnosed with obstructive sleep apnea, treated by CPAP [Continuous Positive Airway Pressure]. The veteran's sleep apnea is more likely than not secondary to his service-connected MDD/PTSD. Scientists at the Madigan Army Medical Center have recently studied the incidence of sleep apnea in military personnel.[] In an article, *Sleep Disorders and Associated Medical Comorbidities in Active Duty Military Personnel,* Dr. Vincent Mysliwiec, et al, observed that sleep disturbances are increasing in frequency and are commonly diagnosed during deployment and when military personnel return from deployment (redeployment).[] [EXHIBIT 9] Recent evidence suggests the increased incidence of sleep disturbances in redeployed military personnel is potentially related to PTSD, depression, anxiety, or mTBI [Mild Traumatic Brain Injury].[]

*Id.* (exhibit citation in original). In footnotes in that paragraph, Mr. Anaise cited to several scholarly medical articles, including the Mysliwiec article discussed in the text. *Id.* Mr. Anaise next inserted a block quotation, composed of sentences from various medical texts regarding the

---

[3] "M.D." is an abbreviation for Doctor of Medicine, an advanced degree needed to work as a medical doctor, and "J.D." is an abbreviation for Juris Doctor, an advanced degree needed to work as a lawyer. *Professional Studies*, U.S. Department of Education, https://web.archive.org/web/20071214142648/http://www.ed.gov/about/offices/list/ous/international/usnei/us/edlite-professional-studies.html.

relationship between sleep apnea and PTSD, which cited additional scholarly medical articles, contained internal quotation marks, and was not clearly attributable to a single source. *Id.*

In the next paragraph, Mr. Anaise inserted another block quotation, this time quoting a Board decision that granted another veteran entitlement to service connection for obstructive sleep apnea as secondary to PTSD. R. at 87. Mr. Anaise concluded, "Veteran suffers from Obstructive Sleep Apnea, requiring treatment by CPAP, thus, entitling him to a 50% disability rating," and inserted the sleep apnea rating criteria from Diagnostic Code 6847. *Id.*

Mr. Anaise also included in his December 2014 submission excerpts from an Institute of Medicine report addressing the onset of tinnitus. R. at 87-88. He then concluded:

> We ask for an increase in the veteran's rating for PTSD/Depressive Disorder to 70%, which is appropriate for the severity of his symptoms and GAF scores of 42-45. We also ask for service connection for Obstructive Sleep Apnea secondary to PTSD. The medical literature strongly supports a correlation between sleep apnea and MDD, PTSD. Finally, we ask for service connection for tinnitus as Veteran was exposed to high decibel noise having served as a tank crewman and in combat.

R. at 89.

In the January 2016 decision on appeal, the Board, inter alia, reopened the sleep apnea claim but denied entitlement to direct service connection, presumptive service connection based on Gulf War service, and service connection secondary to depressive disorder for lack of medical nexus. R. at 24. The Board determined that the Mysliwiec article supported only correlation between psychiatric disorders and sleep apnea and not a causal relationship, and that it was therefore unpersuasive in determining whether Mr. Harvey's sleep apnea was caused or aggravated by his service-connected psychiatric disability. R. at 26. Further, the Board found that "the weight of the competent evidence demonstrates that there is no relationship between the [v]eteran's claimed sleep apnea and either active service or a service-connected disability. There are no contrary opinions of record." R. at 25. The Board also distinguished Mr. Harvey's claim from a February 2014 Board decision concerning another veteran, which Mr. Harvey submitted as an exhibit with his December 2014 submission. The Board determined that Mr. Harvey's claim, unlike the other veteran's claim, lacked favorable medical opinions supporting a link between the service-connected psychiatric disability and sleep apnea. R. at 26. This timely appeal followed.

4

## II. ANALYSIS

### A. December 2014 Submission to the Board

Mr. Harvey argues that the Board provided inadequate reasons or bases for denying entitlement to service connection for sleep apnea as secondary to PTSD because it failed to address a medical nexus opinion submitted by his attorney-physician representative, Mr. Anaise. Appellant's Brief (Br.) at 5-11. Specifically, Mr. Harvey asserts that (1) Mr. Anaise is a board-certified surgeon, (2) his December 2014 "brief clearly identified" Mr. Anaise as both a medical doctor and a lawyer, (3) in the December 2014 submission, Mr. Anaise "opined that there is a medical nexus for sleep apnea," and (4) the Board has previously, in other cases, recognized Mr. Anaise's medical opinions as probative evidence. Appellant's Brief (Br.) at 5. The Secretary argues that the Board was not compelled to view certain assertions in Mr. Anaise's brief as a medical opinion rather than a statement made by legal counsel in the context of a legal brief; therefore, he argues, no medical opinion by Mr. Anaise as to sleep apnea was properly before the Board. Secretary's Br. at 6-8.

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. *Romanowsky v. Shinseki*, 26 Vet.App. 289, 293 (2013). Secondary service connection will be granted if a disability is proximately due to or the result of a service-connected disease or injury or aggravated by a service-connected disease or injury. *See Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc); 38 C.F.R. § 3.310(a)-(b) (2017).

Every Board decision must include a written statement of reasons or bases for its findings and conclusions on all material issues of fact and law; this statement must be adequate to enable the claimant to understand the precise basis for the Board decision and to facilitate informed review by this Court. 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). The Board must analyze the credibility and probative value of evidence, account for the persuasiveness of evidence, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). The Board must also address all potentially favorable evidence. *See Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (per curiam order).

This Court's caselaw is replete with standards to determine the adequacy of a medical opinion for VA benefits purposes. *See, e.g.*, *Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012) (an adequate medical opinion "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion"); *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 301 (2008) ("a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two"); *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (an adequate medical opinion "describes the disability in sufficient detail so that the Board's 'evaluation of the claimed disability is a fully informed one'") (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)). However, neither this Court nor VA statutes or regulations set forth requirements that would illuminate how an adjudicator is to determine whether a specific submission constitutes a medical opinion. Although the Court declines to prescribe absolute requirements necessary for a submission to be considered a medical opinion, the Court will discuss attributes that may be assessed in making such a determination. An assessment of whether a specific submission is a medical opinion is to be undertaken individually; although a particular submission may omit one or another of these attributes, the Board may nevertheless be obligated to assess whether that submission is a medical opinion and consider it in adjudicating a claim.

An initial consideration in this matter is whether, in the December 2014 submission to the Board, Mr. Anaise identified that he was acting in the role of a medical professional in presenting the statements made therein. The Court finds that the December 2014 submission provided no such indication.[4] Instead, Mr. Anaise gave every indication that he provided the December 2014 submission to the Board to present legal argument and advocate on behalf of his client in furtherance of his role as Mr. Harvey's appointed legal representative. Mr. Anaise commenced his submission by explicitly identifying himself as an accredited attorney who was representing the veteran "in his claims for VA benefits" and provided his accreditation number. R. at 82. Further evidence of legal advocacy in his submission includes his widespread use of phrases like "we argue." R. at 82; *see, e.g.*, R. at 85 ("Thus, we argue that a 70% disability rating for PTSD is more appropriate."). In the December 2014 submission, Mr. Anaise also highlighted material evidence

---

[4] Although Mr. Anaise presented his credentials as a board-certified surgeon to the Court, Appellant's Br. at 5, this evidence was not before the Board at the time of its decision. Thus, the Court is unable to consider these credentials. *See Kyhn v. Shinseki*, 716 F.3d 572, 577 (Fed. Cir. 2013) (noting that the Court is prohibited from considering evidence not in the records before the Board).

in the record that was favorable to Mr. Harvey's claims, including enumerated exhibits that he enclosed with the submission. *See* Supplemental R. at 92-97; R. at 84. Mr. Anaise further provided analytical legal discussion of Court precedent and citation to legal sources. R. at 85 (citing *Bowling v. Principi*, 15 Vet.App. 1 (2001), and a Board decision for another veteran). Also indicative of legal argument was Mr. Anaise's request for specific legal remedies for each of the veteran's pending claims. *E.g.* R. at 89 ("We also ask for service connection for Obstructive Sleep Apnea secondary to PTSD.").

Second, the four corners of Mr. Anaise's December 2014 submission not only contained throughout numerous indications that he was acting as a legal representative, it lacked indicia that he provided the submission to the Board as the professional opinion of a medical expert. Mr. Anaise did not label the document itself with a letterhead, email address, title, heading, or other indication that demonstrated an affiliation with the medical profession. Instead, he provided a generic "office" email address, characterized his submission as an "appeal brief," and identified himself as an "attorney at law." R. at 82-89. Indeed, in the December 2014 submission the only indicator that Mr. Anaise was a medical professional was his use of "MD" in his letterhead and signature block, along with the use of "JD." R. at 82, 89. However, directly below that designation in the signature block, "attorney at law" is listed exclusively, without mention of Mr. Anaise's position as a medical professional. R. at 89.

Delving further into the text of the December 2014 submission, Mr. Anaise failed to use any identifying wording, e.g. "in my opinion," that would signal his intention to provide an expert medical opinion. Thus, the text contains no indication that a medical opinion was being provided. Not only that, Mr. Anaise's December 2014 submission lacks any identifiable medical judgment and contains no rationale for an opinion rendered.

Moreover, the language that Mr. Anaise asserts is reflective of his reasoned medical judgment is not independent of or clearly discernible from the legal arguments he presents in support of Mr. Harvey's claim. In the December 2014 submission, Mr. Anaise wrote "[t]he veteran's sleep apnea is more likely than not secondary to his service-connected MDD/PTSD" and proceeded to reference relevant medical literature to support his statement. R. at 86. Mr. Anaise insists that, as a medical expert, "I opined that there is a medical nexus for sleep apnea" by writing this single sentence. Appellant's Br. at 5. Although this sentence, in a context that included indicia of a medical opinion given by a medical expert, is the sort of language a medical examiner would

7

use to provide a medical conclusion, the phrasing is also characteristic of legal advocacy. When viewed within the framework of his December 2014 submission, Mr. Anaise's language functions as legal argument. Indeed, Mr. Anaise inserted what he asserts is his medical opinion on "page 5 of 8" of a submission titled "appeal brief," couched between arguments related to different claims, and immediately precedes, with no transitionary indicator, an analytical legal discussion comparing Mr. Harvey's sleep apnea claim to a previous Board decision from another veteran addressing a similar issue. R. at 86-87. Because, after considering all the above factors, the December 2014 submission failed to elucidate to the Board that Mr. Anaise provided the relevant statement in the capacity of a medical expert, the sentence on page 5, and the accompanying language before and after that sentence, does not constitute a medical opinion.

In conclusion, after considering attributes relevant to such a determination, the Court concludes that Mr. Anaise's December 2014 submission did not contain a discernable medical opinion. This conclusion is based on the text of the submission and the indicators of legal advocacy and legal argument therein, as well as the absence of indicators that Mr. Anaise was acting in the role of a medical expert, including the lack of an identifiable medical opinion containing medical judgment and rationale, in the December 2014 submission. The Board would have needed to exercise extraordinary powers of clairvoyance to recognize that the December 2014 submission contained a medical linkage opinion on behalf of Mr. Harvey, as Mr. Anaise argues before this Court. The Court concludes that Mr. Anaise's inclusion of the designation "MD" on his letterhead and in his signature block, absent any markers within the submission that indicate that he was acting in a medical-expert role, along with the fact that his submission was identified as an "appeal brief" and contained legal argument to the exclusion of medical judgment and opinion, is insufficient to mark the December 2014 submission, or any part thereof, as the opinion of a medical expert.

Therefore, the Court finds no clear error in the Board's determination that no medical opinion of record demonstrated a linkage between Mr. Harvey's sleep apnea and his service-connected psychiatric disability, and affirms the Board's conclusion that there was no evidence demonstrating a relationship between the veteran's sleep apnea and active service or a service-connected disability. *See Thompson*, 14 Vet.App. at 188; *see also Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) ("A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed.'" (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948))). The Court further holds that the Board provided adequate reasons or bases that enable the claimant to understand the precise basis for that determination and facilitate judicial review. *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 52.

### B. Model Rule of Professional Conduct 3.7

Based on arguments made in the Secretary's brief, the Court ordered oral argument and supplemental memoranda of law to address the appropriateness, in light of the Model Rules of Professional Conduct (MRPC) Rule 3.7, of an attorney serving as an expert witness in a case where he or she is also the legal representative of record. Specifically, the Court ordered the parties to address whether (1) Rule 3.7 applied to contexts other than a trial setting; (2) combining the role of advocate and witness could prejudice the Board; (3) a representative of record submitting a medical opinion on behalf of a client involves a conflict of interest between the lawyer and client; and (4) this case presented a situation in which the interest in protecting the integrity of the advocate's professional role, by eliminating the opportunity of mixing law and fact, warranted the application of Rule 3.7.

The MRPC "provide a framework for the ethical practice of law," Ann. Model Rules of Prof'l Conduct Scope § 16 (Am. Bar Ass'n 2015) (hereinafter MRPC), and "should be interpreted with reference to the purposes of legal representation and of the law itself," MRPC Scope § 14. Both the Board and the Court have adopted the Rules as standards of conduct for attorney practice. 38 C.F.R. § 14.632(d) (2017) ("[A]n attorney shall not, in providing representation to a claimant before VA, engage in behavior or activities prohibited by the rules of professional conduct of any jurisdiction in which the attorney is licensed to practice law."); Rules of Admission and Practice, U.S. VET. APP. Rule 4(a) ("Unless otherwise provided by specific rule of the Court, the disciplinary standard for practice is the Model Rules of Professional Conduct adopted by the American Bar Association on August 2, 1983, as amended.").

Clearly, the MRPC contemplate its application to "tribunals." MRPC r. 1.0(m) (defining "tribunal" as "a court" or "administrative agency" "acting in an adjudicative capacity"). The MRPC specifically contemplate application before "tribunals" acting in an adjudicative capacity where "a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular manner." *Id.* Rule 3.7 provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely

9

to be a necessary witness" except under limited circumstances. MRPC r. 3.7(a). The Comments to Rule 3.7 indubitably extend the advocate-witness prohibition beyond trial proceedings to include proceedings before tribunals. *See* MRPC r. 3.7 cmt. 3 ("To protect the tribunal, paragraph (a) prohibits a lawyer from simultaneously serving as advocate and necessary witness[.]"); *see also* Ethics 2000 Commission Model 3.7 Reporter's Explanation of Changes, *American Bar Association Center for Professional Responsibility*, https://www.americanbar.org/groups/professional_responsibility/policy/ethics_2000_commission/e2k_rule37rem.html (revising the language of Comment 3 "to clarify that the prohibition in paragraph (a) is for the protection of the tribunal as well as parties"); MRPC Scope § 21 ("The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule" and Comments are "intended as guides to interpretation.").

Rule 3.7 is intended to prevent the blurring of lines between argument and evidence in a way that may confuse or mislead a tribunal. *See* MRPC r. 3.7 cmt. 1 ("Combining the roles of advocate and witness can prejudice the tribunal[.]"); MRPC r. 3.7 cmt. 2 ("It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."). Rule 3.7 also protects the integrity of the lawyer's role as an advocate. *See Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 100 (1st Cir. 1988) (evaluating the application of Rule 3.7 to non-trial proceedings prior to the incorporation of "tribunal" language in the Comments and concluding that "the most cogent rationale" for the rule is "the interest in protecting the integrity of the advocate's professional role by eliminating the opportunity of mixing law and fact"); *see also* MRPC Preamble § 2 ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system.").

In this instance, because we find that Mr. Anaise did not submit a medical opinion in the text of his December 2014 "appeal brief," we can find no violation of Rule 3.7. However, based on the Board decision that evidenced no comprehension that Mr. Anaise intended to submit a medical opinion within his 2014 submission, and Mr. Anaise's arguments to this Court that he indeed intended such a course, there is no doubt that his December 2014 submission blurred the line between making a legal argument and providing a medical opinion to support service connection. *See* MRPC r. 3.7 cmt. 2. That Mr. Anaise would even attempt to submit his own medical opinion in the text of an "appeal brief" is emblematic of the confusion that the advocate-witness rule is intended to prevent. *See* MRPC r. 3.7 cmt. 1.

10

## C. Other Arguments

### 1. Obstructive Sleep Apnea

Mr. Harvey contends that the Board clearly erred in its assessment of a medical article submitted as evidence. Appellant's Br. 7-8; Reply Br. at 3-5. Specifically, he argues that the Board improperly relied on its own medical judgment to determine that the article reflected a correlative rather than a causal relationship between PTSD and sleep apnea, therefore assigning little probative weight to the evidence. *Id*. He essentially argues that secondary service connection is supported because the article shows that sleep apnea is more prevalent in veterans suffering from PTSD and mood disorder. Appellant's Br. at 8-11.

VA will grant secondary service connection if a disability *is proximately due to or the result of* a service-connected disease or injury or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310(a)-(b) (2017) (emphasis added); *see Allen*, 7 Vet.App. at 448. The Board's determinations regarding the probative value of evidence and whether Mr. Harvey's sleep apnea was proximately due to or the result of his service-connected depressive disorder are findings of fact subject to the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Smallwood v. Derwinski*, 10 Vet.App. 93, 97 (1997). "A factual finding 'is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey*, 2 Vet.App. at 94 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395)).

In its decision on appeal, the Board addressed the article, *Sleep Disorders and Associated Medical Comorbidities in Active Duty Military Personnel* ("Mysliwiec article"), enclosed with the December 2014 document submitted by Mr. Harvey's representative. R. at 26. The Mysliwiec study itself consisted of a retrospective review of the electronic medical records of 761 military personnel referred for a sleep medicine evaluation at a major military medical treatment facility in the Pacific Northwest in 2010. R. at 98-105. The article noted that, although recent evidence "suggested the increased incidence of sleep disturbances in redeployed military personnel was potentially related to PTSD, depression, anxiety or [mild] TBI," "[t]o date, no large cohort studies of redeployed military personnel with a definitive sleep disorder diagnosis existed" and thus it "remained unclear whether their sleep complaints were solely an epiphenomenon of comorbid illness, persistent maladaptive sleep practices that occur during deployment, or an independent diagnosis." R. at 98. The Mysliwiec article indicated that "the preponderance of research on sleep

disorders in military personnel was limited by the use of data from subjective assessment tools or examination of specific diagnoses." *Id.* The article cited to a study published in Medical Surveillance Monthly Report in 2010, that diagnosed 76.8% of the 69 participants, all redeployed soldiers diagnosed with PTSD, TBI, or other mental health disorders, with obstructive sleep apnea, but indicated that the study was limited in that obstructive sleep apnea was the only sleep diagnosis reported. R. at 98, 101.

The Board determined that, although "the article supports a correlation between mental health disorders and sleep apnea (and other sleep disorders), it does *not* support a causal relationship, or, specifically, a finding that psychiatric disorders cause sleep apnea." R. at 26 (emphasis in original). The Board further found that the article was not "persuasive in considering whether [Mr. Harvey's] current sleep apnea is caused or aggravated by his service-connected psychiatric disability." *Id.*

The Court concludes that Mr. Harvey's argument, that the Board's interpretation of the Mysliwiec article's findings amounts to the inappropriate rendering of a medical opinion, Appellant's Br. at 7-8, is unavailing. Interpretation of a medical treatise's meaning and assessment of its probative value as evidence in support of the claim being adjudicated are within the purview of the Board as factfinder. *Caluza*, 7 Vet.App. at 506 ("the Board's statement of reasons or bases must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence").

Here, the Board correctly applied the legal standard contained in the secondary-service-connection regulation, 38 C.F.R. § 3.310(a), and determined that the Mysliwiec article was unpersuasive for two reasons. R. at 26. First, the Board found that the article did not support a causal or aggravation relationship between sleep apnea and psychiatric disorder, as would be required for secondary service connection; second, the Board found that the Mysliwiec article indicated that sleep apnea may cause or aggravate psychiatric disorders, and not the other way around as the veteran argued. *Id.*

The Court cannot find clearly erroneous the Board's conclusion that the competent evidence does not establish a secondary service-connection relationship between Mr. Harvey's sleep apnea and his service-connected psychiatric disabilities. Moreover, despite Mr. Harvey's

12

assertions that a correlation[5] between a service-connected disability and a secondary condition is sufficient evidence to establish secondary service connection, the Board was correct in holding that a causation or aggravation relationship is required. *See* 38 C.F.R. §§ 3.310(a), (b) (2017) (referring to a secondary disability that is "proximately due to or the result of" a service-connected disability, or "any increase in severity of a nonservice-connected [disability] that is proximately due to or the result of a service-connected [disability]"); *see also Allen*, 7 Vet.App. at 447-49 (concluding that § 3.310 requires that the service-connected condition must cause or aggravate the secondary condition). A mutual relationship or some degree of correspondence that is not based on causation or aggravation is not sufficient to meet the requirements of § 3.310. Thus, the Board did not err as Mr. Harvey contends. And, as discussed above in section II.A., despite Mr. Harvey's contentions otherwise, Mr. Anaise's December 2014 appeal brief did not contain a medical opinion determining that the veteran's sleep apnea is proximately due to, a result of, or aggravated by a psychiatric disorder. *See supra* II.A; 38 C.F.R. § 3.310(a).

Therefore, the Court holds that the Board did not clearly err in determining the meaning and probative value of the Mysliwiec article as evidence in support of Mr. Harvey's claim, or its determination that the evidence does not show that the veteran's sleep apnea is not causally related to his service-connected psychiatric disorder for purposes of secondary service connection. *See Smallwood*, 10 Vet.App. at 97; *Hersey*, 2 Vet.App. at 94; *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears the burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

### *2. Tinnitus*

Mr. Harvey also argues that the Board's reasons or bases for denying entitlement to service connection for tinnitus were inadequate because the Board failed to address medical evidence in the form of an Institute of Medicine (IOM) report regarding the potential of delayed onset of tinnitus. Appellant's Br. at 12.

In the decision on appeal, the Board did not deny entitlement to service connection for tinnitus, as Mr. Harvey argues, but rather it denied reopening of a claim for service connection for tinnitus for lack of new and material evidence under 38 C.F.R. § 3.156(a). R. at 4, 43. The Board found that "[t]he evidence received subsequent to the February and September 2009 rating decision

---

[5] Correlation is defined as a "mutual relationship or connection" or as "the degree of relative correspondence, as between two sets of data." WEBSTER'S NEW WORLD DICTIONARY 312 (3d ed. 1988).

is not new and material to reopen" the claim for service connection for tinnitus. R. at 6. Even construed sympathetically, Mr. Harvey does not allege that the IOM report constituted sufficient evidence to reopen his previously denied tinnitus claim. *See Robertson v. Shinseki,* 26 Vet.App. 169, 181 (2013) (new argument does not constitute new and material evidence). Even should the IOM report be construed as new and material evidence that the Board failed to address, Mr. Harvey has not raised a specific argument challenging the Board's denial of reopening of his claim. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006), *rev'd on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008). Therefore, Mr. Harvey fails to demonstrate prejudicial error in the Board's determination. *See Hilkert*, 12 Vet.App. at 151.

### III. CONCLUSION

Upon consideration of the foregoing, the Court will AFFIRM the portions of the January 14, 2016, Board decision denying entitlement to service connection for sleep apnea, as secondary to a service-connected psychiatric disorder, and the reopening of a claim for service connection for tinnitus. The appeal as to the remainder of the Board decision is DISMISSED.