# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-7000

THURMAN FULLER, JR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 6, 2020                           Decided February 23, 2022)

*Samuel W. Apicelli* and *Victoria R. Danta*, both of Philadelphia, Pennsylvania, for the appellant.

*Ronen Z. Morris*, Appellate Attorney, with whom *William A. Hudson*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Shir Davidovicz*, Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and GREENBERG and ALLEN, *Judges*.

BARTLEY, *Chief Judge*, filed the opinion of the Court. ALLEN, *Judge*, filed a dissenting opinion.

BARTLEY, *Chief Judge*: Veteran Thurman Fuller, Jr., appeals through counsel a November 20, 2018, Board of Veterans' Appeals (Board) decision denying entitlement to an effective date earlier than August 1, 2009, for apportionment of VA benefits to his spouse, Ms. Beverly Fuller.[1] Record (R.) at 3-12. This appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of this Court, with oral argument,[2] to consider whether California community property law confers standing on Mr. Fuller to pursue this appeal. *See* R. at 6-7. For the reasons set forth below, the Court finds that as a consequence of his intact marriage to Ms. Fuller, the lack of evidence of planned marital dissolution, the fact that the claim at issue will benefit both spouses, their mutually expressed unity of interest in the pursuit and outcome of the earlier effective date claim, and the

---

[1] In the decision on appeal, the Board refers to Ms. Fuller as "B."

[2] *Fuller v. Wilkie*, U.S. Vet. App. 18-7000 (oral argument held Nov. 6, 2020, https://www.youtube.com/watch?v=UJvKlN-vDJM) [hereinafter Oral Argument].

economic injury to their community property sustained by VA's denial of an earlier effective date for the apportioned benefits, Mr. Fuller has standing to pursue the appeal. Furthermore, the Court concludes that VA failed to provide reasons or bases concerning its invocation of the presumption of regularity as to its April 2004 communication to Ms. Fuller. Accordingly, the Court will set aside the November 2018 Board decision and remand the matter for further development, if necessary, and readjudication consistent with this decision.

## I. FACTUAL BACKGROUND

Mr. Fuller served on active duty in the U.S. Air Force from October 1958 until April 1962. R. at 1621. In 1977, Mr. Fuller and Ms. Fuller married. R. at 2603. In November 1999, Mr. Fuller was incarcerated in Cameron, Missouri, following conviction of a felony offense and remained incarcerated until 2014. R. at 2401, 2601, 2097.

In February 2004, while the veteran was incarcerated, a VA regional office (RO) granted service connection for residuals of a left elbow condition and assigned a 10% evaluation, effective July 28, 2002. R. at 2605-09, 2612-14. In the notification letter to Mr. Fuller, VA indicated that a portion of his compensation was withheld due to his incarceration and that his dependents may be entitled to apportionment of the withheld portion. R. at 2606. The letter directed the veteran to complete and return VA Form 21-686c, "Declaration of Status of Dependents," within 60 days. R. at 2606-07. In March 2004, Mr. Fuller returned the completed form to the RO, identifying Ms. Fuller as his dependent and providing a California address. R. at 2603-04. In April 2004, the RO sent a letter to Ms. Fuller at the address provided by Mr. Fuller, stating that Mr. Fuller had "submitted a claim on your behalf," informing her of her right to file an apportionment claim, and seeking verification of her income and expenses. R. at 2600. The RO did not receive a response to that letter. R. at 8.

In July 2009, Mr. Fuller sent VA a letter providing an updated California address for Ms. Fuller, expressing a belief that his spouse had been receiving apportionment of his benefits. R. at 2569 ("[A]mount withheld is to go to my wife, Beverly J. Fuller, which I [have] been thinking you have been sending her and I am inquisitive [why] her benefits [have] not been mailed to her, she is authorize[d] to get half of my benefit awarded [and] I filled out the necessary paperwork."). The next day, Ms. Fuller expressed her desire to "file for an apportionment of any benefit due [] from . . . January 2002." R. at 2572.

2

In August 2009, VA sent a letter to Mr. Fuller indicating that VA had received a request for apportionment of his VA benefits and requesting additional information. R. at 2566-67. Mr. Fuller sent a letter to VA expressing surprise at their request for further information and seeking clarity as to the status of apportionment of his benefits: "I [have been] eligible . . . since [the] year 2002 and VA has been deducting one half (1/2) of my benefits and supposedly the [VA] was to send the deduct[ed] one half (1/2) to my spouse . . . and the [VA] has not sent her any checks." R. at 2573. Also in August 2009, VA requested further information from Ms. Fuller. R. at 2564-65.

In September 2009, the RO granted an apportionment to Ms. Fuller, effective August 1, 2009. R. at 2556-67. Mr. Fuller filed a Notice of Disagreement (NOD) contesting the August 2009 effective date, arguing that his spouse was entitled to an apportionment effective July 2002, the effective date of his entitlement to compensation benefits. R. at 2549. The RO issued a Statement of the Case (SOC) in April 2010, R. at 2519-27, and Mr. Fuller timely perfected an appeal to the Board. R. at 2515-16. In June 2010, Mr. Fuller asserted that he had earlier submitted an apportionment claim "on behalf of" his spouse. R. at 2495.

In September 2012, the Board remanded Mr. Fuller's claim to the RO, noting that Mr. Fuller "appear[ed] to be supporting [Ms. Fuller's] claim for benefits." R. at 2447-52. The Board observed that, although Mr. Fuller was afforded an SOC and had filed the VA Form 9 (Substantive Appeal), there was no indication that Ms. Fuller was provided a copy of the SOC or the Substantive Appeal, and no indication that she was notified of a scheduled hearing. R. at 2450. The Board remanded the case for the RO to provide Ms. Fuller with proper notice. R. at 2451-51. In October 2012, the RO issued a Supplemental SOC (SSOC) to Mr. Fuller. R. at 2441-43.

In February 2013, the Board again remanded the issue of the effective date of apportionment benefits for the RO to address whether the veteran had standing to file an NOD as to the September 2009 decision assigning an effective date for apportionment, especially where the veteran was arguing that his spouse was due an earlier effective date for apportionment. R. at 2177-83. In October 2015, the RO issued an SSOC to Mr. Fuller, finding that he did not have standing to file an NOD as to the September 2009 rating decision. R. at 2135-39. Ms. Fuller submitted a letter to VA indicating that she had not received any correspondence from VA requiring her response until the October 2015 SSOC. She indicated that "[f]actually, in my opinion, because [Mr. Fuller] was the [v]eteran, he was the individual better informed and capable to evaluate and respond to all aspects regarding his VA benefits." R. at 146. She asserted that to the

3

extent the October SSOC informed her that she could choose an individual to represent her interest, "the person I feel most knowledgeable and capable in this situation[] is my spouse[.]" *Id.* The Board denied an earlier effective date of benefits in November 2016, concluding that Mr. Fuller did not have standing to file the NOD. R. at 2069.

Mr. Fuller appealed to this Court and the Secretary conceded that the Board had provided inadequate reasons or bases for finding that Mr. Fuller lacked standing because Ms. Fuller's residence in California, a community property state, was not considered. However, the Secretary argued that this omission was harmless because, assuming that the Board should have considered Ms. Fuller's residence in a community property state, the remedy would be issuing a decision on the merits, which the Board provided. In June 2018, this Court issued a decision remanding Mr. Fuller's appeal. R. at 149-50 (*Fuller v. O'Rourke*, No. 16-4106, 2018 WL 2715399 (Vet. App. June 6, 2018) (*Fuller I*)). The Court concluded that lack of jurisdiction cannot be harmless error: if an individual lacks the ability to bring an appeal then the Board lacks jurisdiction to render a merits decision on the appeal. R. at 148; *see Fuller I*, 2018 WL 2715399, at *4 (citing *Jarrell v. Nicholson*, 20 Vet.App. 326, 334 (2006) (en banc)). The Court remanded Mr. Fuller's claim for the Board to consider whether he was authorized to file an NOD as to the apportionment effective date. R. at 149.

In November 2018, the Board issued the decision on appeal. R. at 3-12. The Board determined that Mr. Fuller has standing to appeal the effective date assigned for apportionment of his benefits to his spouse because he has a property interest in those benefits due to Ms. Fuller residing in the community property state of California. R. at 7. Because the denial of an earlier effective date for the apportionment of VA benefits to Ms. Fuller indirectly deprived him of those funds, which would be considered part of the couple's community property under California state law given their intact marriage, the Board concluded that the veteran had standing to pursue the appeal. Although Mr. Fuller was not entitled to receive the apportioned benefits under 38 C.F.R. § 3.665, the Board found that his property interest in the shared marital estate with his spouse arose from the conversion of their estate to community property under California state law. *Id.*

The Board concluded that Ms. Fuller's July 2009 correspondence was the first submission of the claim for apportionment, R. at 5; and that, to the extent Mr. Fuller's March 2004 VA Form 21-686c could be construed as an informal claim for apportionment to Ms. Fuller, that claim was abandoned because Ms. Fuller failed to respond within one year to VA's April 2004 request

for her financial information. R. at 5, 11. The Board acknowledged the veteran's contention that Ms. Fuller had not received the April 2004 VA letter because she moved several times between 2002 and 2004. However, the Board found that the presumption of regularity applied, that Mr. Fuller failed to rebut the presumption, and that VA had provided adequate notice to Ms. Fuller via the April 2004 letter. R. at 9-10. The Board further found that VA was under no obligation to inform the veteran that Ms. Fuller did not file for an apportionment. R. at 10.

The Board concluded that an effective date of apportionment earlier than August 1, 2009, was not warranted because Ms. Fuller filed for apportionment on July 9, 2009, and that was the earliest effective date possible under the facts of this case. R. at 11; *see* 38 C.F.R. § 3.665(f) (providing in relevant part that apportionment of an incarcerated veteran's benefits may not be made for any period prior to the date of receipt of a new claim or intent to file a claim as set forth in § 3.155(b)). This appeal followed.

## II. STANDING

### A. The Parties' Arguments

The Secretary argues that the Court has no jurisdiction to address the appeal because Mr. Fuller lacks standing to pursue the apportionment effective date decision. Secretary's Brief (Br.) at 4. He argues that the Board failed to reconcile its decision as to standing with precedent caselaw holding that veterans lack standing to pursue appeals of their dependents' apportionment decisions. Secretary's Br. at 5-6 (citing *Ferenc v. Nicholson*, 20 Vet.App. 58 (2006); *Belton v. Principi*, 17 Vet.App. 209 (2003)). He urges dismissal.

Mr. Fuller argues that the Court must not dismiss the appeal because the Board made a specific finding of fact that Mr. Fuller had standing; citing to *Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009), he contends that the Court cannot disturb that favorable finding. Appellant's Reply Br. at 2. Mr. Fuller argues that during his incarceration, and to the current day, Ms. Fuller is his spouse and is a resident of California and Mr. Fuller has "a property interest in the marital estate he shared with his [spouse], which arose of the conversion of their estate to community property under California state law." Appellant's Reply Br. at 2-3. He argues that the Board's denial of an earlier effective date for apportionment indirectly deprives Mr. Fuller of these funds, that "would have been considered a part of their community property." *Id.*

5

At oral argument, the Secretary argued that 38 U.S.C. § 5301(a), a statute regarding the nonassignability of VA benefits payments, and 10 U.S.C. § 1408, the Uniformed Services Former Spouses' Protection Act (USFSPA), preempt state law that would characterize VA disability benefits as community property or otherwise subject them to marital property division. Oral Argument at 43:56-44:13; 44:30-45:39. The Secretary argued that a state law that would purport to give an incarcerated veteran, like Mr. Fuller, a property interest in the apportioned part of their benefits is preempted by 38 U.S.C. § 5313, which requires that a veteran incarcerated for the commission of a felony have his or her VA compensation benefits reduced to no more than 10%. Oral Argument at 44:13-44:29. The Secretary relies on *Mansell v. Mansell*, 137 S. Ct. 1400 (2017), and *Howell v. Howell*, 490 U.S. 581 (1991), for the proposition that the USFSPA excludes VA disability benefits from state community property laws and categorically bars state courts from subjecting to community property division the waived portion of VA military retirement pay. Oral Argument at 49:08-49:23.

Mr. Fuller asserts that the USFSPA, and by implication the Supreme Court's holding in *Mansell*, does not apply in the instant case and that sections 5301(a) and 5313 likewise do not impact Mr. Fuller's standing here. Oral Argument at 13:10-14:03.

## B. Analysis

### 1. Community Property

As a community property state, California "treats all property earned by either spouse during the marriage as community property; each spouse is deemed to make an equal contribution to the marital enterprise, and therefore each is entitled to share equally in its assets." *McCarty v. McCarty*, 453 U.S. 210, 216 (1981). Put plainly, in a community property system spouses jointly own all property created or acquired during the marriage, regardless of which spouse earned that property. WILLIAM QUINBY DE FUNIAK AND MICHAEL VAUGHN, PRINCIPLES OF COMMUNITY PROPERTY §§ 15-16 (2d ed. 1971). Under California law, it is a basic principle that "[t]he respective interests of each spouse in community property *during continuance of the marital relation* are present, existing, and equal interests." Cal. Fam. Code § 751 (West) (emphasis added).

Ownership of community property gives rise to a variety of considerations, which can be broadly separated into two categories: tax and nontax considerations. *See, e.g.*, M. READ MOORE, AM. L. INST., COMING SOON TO YOUR STATE: COMMUNITY PROPERTY 170-77 (2004). Nontax

6

considerations include lifetime management and control of community assets,[3] lifetime gifts,[4] creditors' claims,[5] and disposition at death. Tax considerations include estate tax implications, as well as income tax laws governing adjustment to the income tax bases of property.[6] While some of these considerations become relevant in the event of divorce and the resulting dissolution of the community, community property laws such as California's definitively have specific implications for intact marriages. Indeed, federal courts have found that a spouse's interest in community property is sufficient to confer standing during a marriage.[7]

## 2. Standing

Article III standing requires that a party bringing an action have suffered "injury in fact" that is traceable to the conduct complained of, and it must be likely that the injury will be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Similarly, in veterans law cases a party seeking relief in this Court must be "adversely affected" by a Board decision. *See Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996) ("Under 38 U.S.C. § 7266(a), a party must be 'adversely affected' by a decision of the Board in order to appeal to the [Veterans] Court. The [Veterans Court] considers this a 'standing' requirement and that a party must, therefore, show some actual or threatened injury.") (citing *Landicho v. Brown*, 7 Vet.App. 42, 49 (1994)).

Where, as here, there is no dispute as to the underlying facts of the case, the question of whether a party satisfies the "adversely affected" standing requirement to pursue an appeal is a legal question that courts review de novo. *See, e.g., Arakaki v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007) ("Standing is a legal issue subject to de novo review."); *Maine People's Alliance And*

---

[3] E.g., each spouse has a fiduciary obligation to deal fairly and to provide full disclosure to the other spouse regarding the existence, characterization, and valuation of all assets in which the community has or may have an interest and debts for which the community is or may be liable. *See* Cal. Fam. Code § 1100(e).

[4] E.g., a gift of community property made by one spouse without spousal consent will be subject to the claims of the nondonor spouse. *See* Cal. Fam. Code. §§ 1100(b), 1101.

[5] E.g., community property assets can generally be reached to satisfy debts incurred by either spouse during the marriage. *See* Cal. Fam. Code § 910.

[6] *See generally* Internal Revenue Manual, 25.18.1 *Basic Principles of Community Property Law* (Sept. 10, 2017).

[7] *See, e.g.*, *Gutierrez v. State Farm Mut. Ins. Co*, 2012 WL 398838 (N.D. Cal. Feb. 7, 2012) (finding a community interest in marital property sufficient to confer standing on a noncontracting spouse under the federal Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692c(d), and standing for a conversion claim against an insurance company under California state law).

*Natural Resources Defense Council v. Mallinckrodt, Inc*., 471 F.3d 277, 283 (1st Cir. 2006) ("The existence [or not] of standing is a legal question and, therefore, engenders de novo review."); *Gest v. Bradbury*, 443 F.3d 1177, 1181 n. 1 (9th Cir. 2006) ("Mootness and standing are questions of law that we review de novo."). Therefore, the Court is unpersuaded by Mr. Fuller's argument that *Medrano* prohibits us from revisiting the Board's "factual" finding that Mr. Fuller has standing. *See* Appellant's Reply Br. at 2 (citing *Medrano*, 21 Vet.App. at 170). Contrary to the Board's characterization of the issue, a decision as to standing is a legal conclusion, not a factual finding. Nevertheless, even though we reject Mr. Fuller's *Medrano* argument, we will affirm that portion of the Board decision that determined that Mr. Fuller has standing to appeal the effective date of apportionment benefits.

### 3. Sections 5313 and 5301(a), and the USFSPA, do not Impact Standing in this Case

As noted, the Secretary argues that 38 U.S.C. §§ 5313 and 5301(a) and the USFSPA prevent Mr. Fuller from having standing to pursue this case because, in his view, they preempt state law that would characterize VA disability benefits as community property and otherwise subject those benefits to marital property division should the marriage end. Section 5313 provides that VA compensation benefits for veterans incarcerated for conviction of a felony will be reduced. 38 U.S.C. § 5313(a)(1). Under that provision a veteran such as Mr. Fuller, with a service-connected condition evaluated 20% disabling or higher, has compensation payments reduced to 10%. The residual amount not paid to the veteran may be paid as an apportionment to his or her dependents under 38 U.S.C. § 5307(a). VA benefits are not assignable and are generally exempt from legal or equitable process such as taxation and the claims of creditors, except to the extent specifically authorized by law. 38 U.S.C. § 5301(a)(1). The USFSPA excludes from the definition of "disposable retirement pay" divisible upon divorce the amount of retirement pay that a veteran waives to receive VA disability benefits. 10 U.S.C. § 1408(a)(4)(A)(ii). As a result, under the USFSPA a state court may treat a retiree's total monthly military retirement pay as community property divisible between a service member and a former spouse upon divorce, but only that portion that is in excess of retired pay waived, among other reasons, to receive VA disability benefits. 10 U.S.C. §§1408(a)(4)(A)(ii), (c)(1).

We first address the Secretary's section 5313 argument. He contends that recognizing Mr. Fuller's property interest in the apportioned benefits for standing purposes would violate the statutory limitation on payment of compensation to an incarcerated veteran and caselaw related

thereto. The Court is unpersuaded. The record reflects, and Mr. Fuller does not dispute, that due to his incarceration for a felony conviction, beginning in March 2004 his VA compensation benefits were reduced in accordance with section 5313. R. at 2606. Apportionment to his dependent spouse occurred in accord with statute and, again, Mr. Fuller does not challenge the apportionment in the least. While section 5313 provides that compensation not paid to a veteran by reason of incarceration may be apportioned to a spouse, the statute does not suggest that a veteran whose compensation has been lawfully reduced in this manner cannot retain an interest in those apportioned funds to the limited extent that the veteran continues in a marital relationship with such spouse who resides in a community property jurisdiction. Rather, the statute simply recognizes that the veteran, while incarcerated, shall not be paid disability compensation in an amount that exceeds a prescribed reduced disability evaluation level. 38 U.S.C. 5313(a)(1)(A). Mr. Fuller's circumstances fully comport with that provision. Thus, given the community property jurisdiction in which Ms. Fuller resides, recognizing Mr. Fuller's community property interest in funds that have been statutorily apportioned to Ms. Fuller does not contravene section 5313's prohibition of full compensation payments to incarcerated veterans. In addition, as we explain in part B.4. below, this outcome is not in tension with established caselaw related to standing and apportionment.

We turn now to the Secretary's argument that a finding of standing in this case would violate section 5301(a)(1), which provides in relevant part that VA benefits payments "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1). Mr. Fuller responds that the statutory language does not suggest a per se rule barring recognition of an incarcerated veteran's property interest in apportioned benefits under the unique circumstances here. Oral Argument at 1:16:38-1:17:12.

Legal process is "the means whereby a court compels compliance with its demands." BLACK'S LAW DICTIONARY 1458 (11th ed. 2019) (quoting 72 C.J.S. *Process* § 2, at 589 (1987)); *see Woods v. Nicholson*, 21 Vet.App. 521, 2006 WL 3840220 at *2 (2006) (table) (finding that a D.C. Superior Court order of attachment constitutes "legal process") , *aff'd*, 245 F. App'x 20 (Fed. Cir. 2007). Consistent with that definition, Congress carved out specific exceptions to section 5301(a)'s general prohibition, explicitly allowing the use of legal process against a veteran's benefits in some cases. *See, e.g.*, 42 U.S.C. § 659(h)(1)(A)(ii)(V) (authorizing VA to

withhold a portion of a veteran's VA disability compensation for alimony or child support pursuant to legal process when a veteran has waived a portion of his military retirement pay to receive VA benefits).

The language of section 5301(a), and its reach and meaning as described, do not support the Secretary's argument that finding standing in Mr. Fuller's case would violate section 5301(a)'s prohibition. There is no "legal process," no court order, no court writ, no court summons, no court notice at risk in our determination that Mr. Fuller has standing due to his community property interest in Ms. Fuller's assets given their intact marital relationship. The Secretary has presented no evidence that a finding of standing would threaten to violate section 5301(a)'s prohibition against attachment, levy, seizure, or legal process of VA disability benefits. And, contrary to the Secretary's argument, there is no support for his argument that a standing determination here will result in a court-ordered or court-sponsored division or transfer of Ms. Fuller's apportioned benefits. Oral Argument 52:47-52:55. Thus, the Court is not convinced by the Secretary's 5301(a) argument.

Moving to the Secretary's argument regarding the USFSPA, as noted, section 5301(a) prohibits assignment or legal process against VA benefits, "except to the extent authorized by law." 38 U.S.C. § 5301(a)(1). The USFSPA is an example of a statute that specifically allows VA benefits payments to be assignable and awardable as property, upon the dissolution of a marriage. *See* DEP'T OF DEF., A REPORT TO CONGRESS CONCERNING FEDERAL FORMER SPOUSE PROTECTION LAWS (2019). The Secretary argues that *Mansell* and *Howell* support his argument that the USFSPA preempts state property law, including California's, which would treat VA disability benefits as community property. *Howell*, 137 S. Ct. at 1400; *Mansell*, 490 U.S. at 581. In *Mansell*, the Supreme Court held that under the UFSFPA state courts do not, upon divorce, have authority to treat as divisible property military retirement pay that has been waived to receive veterans disability benefits. 490 U.S. at 594-95. In the same vein, in *Howell* the Supreme Court prohibited states from ordering a veteran to restore to a former spouse the military retirement pay lost when the veteran waived military retirement pay to receive VA disability benefits. 137 S. Ct. at 1406.

*Mansell* and *Howell* do not support the Secretary's argument that the USFSPA prevents Mr. Fuller from having standing in this case. First, the USFSPA applies only where the marital relationship is ending or has ended via divorce—hence the statute's reference to "former spouses." The statute does not speak to the use of VA benefits funds where there is an intact marriage such

10

as the Fullers'. Second, both *Mansell* and *Howell* involve the dissolution of a marriage via divorce; in both cases the parties were former spouses. In *Mansell*, the Supreme Court cabined its analysis to the USFSPA and the context of a divorce: "For the reasons stated . . . , we hold that the [USFSPA] does not grant state courts the power to treat as property *divisible upon divorce* military retirement pay that has been waived to receive veterans' disability benefits." 490 U.S. at 594-95 (emphasis added). The same is true of the Supreme Court's analysis in *Howell*, which similarly addressed the question of dividing community property following divorce. 137 S. Ct. at 1401.

Simply put, the USFSPA, *Mansell*, and *Howell* do not apply in this case. Mr. and Ms. Fuller were married at the time that Mr. Fuller was first awarded benefits, R. at 2605-09; married when Mr. Fuller first identified Ms. Fuller as a dependent eligible for an apportionment of his benefits during his incarceration, R. at 2603-04; and their marriage has continued, including the period during which Mr. Fuller appealed to this Court, Oral Argument at 4:28-4:31. Unlike in *Mansell* and *Howell*, where veterans in the context of divorce proceedings asserted a property interest that was diametrically opposed to their former spouses' financial interest, the Fullers have an intact marriage, they have jointly asserted entitlement to an earlier effective date for apportionment, and Mr. Fuller is not asserting a property interest in opposition to Ms. Fuller's.

Moreover, the record in this case reflects that Mr. Fuller pursues this appeal as to the effective date of the apportionment on Ms. Fuller's behalf, with her full agreement and consent. *See* R. at 2569, 2495, 146 (Ms. Fuller's statement that she fully agrees with Mr. Fuller's latest appellate filing and hopes that her letter suffices as to VA's need for her input). Our colleague advances a claim that recognizing Mr. Fuller's community interest in his legal spouse's apportioned benefits for standing purposes will result in many veterans losing half of their benefits in the event of marital dissolution, since he believes that our decision upends *Mansell* and *Howell*. *Post* at 34. But our decision does not affect the reach of *Mansell* and *Howell*. At the heart of our analysis is a set of unique factors—the Fullers' intact legal marriage with no evidence of pending dissolution throughout the period of Mr. Fuller's incarceration and the appeal period, the Fullers' mutually expressed unity of interest in the pursuit and outcome of the earlier effective date claim, and the fact that the claim for an earlier effective date of apportionment benefits, if successful, would benefit both spouses. These factors are notably absent from *Mansell* and *Howell* and are also absent

11

in cases involving divorce proceedings, where the parties generally advance opposing interests.[8] Given the unique facts of the Fuller case, the Court concludes there is no basis to find against the veteran by referencing the USFSPA and caselaw applicable to divorcing or divorced parties. To do so would unfairly deprive the Fullers of the benefit of community property laws in anticipation of an event, divorce, that the Court has no evidence is ever likely to occur.

The Court concludes that the USFSPA and related caselaw have no application here in the circumstance of an unbroken, intact marriage where there is no evidence of a former or soon-to-be-former spouse involved and where there is mutually expressed unity of interest in the outcome of the litigation. There is no reason to find Mr. Fuller without standing based on the fact that, as is true in any marriage, there is future potential for divorce or dissolution of the marriage. Such a holding would deprive Mr. Fuller of the benefit inherent in his current intact marriage with Ms. Fuller. Thus, the USFSPA and related caselaw certainly do not prevent Mr. Fuller from achieving standing on the basis of California community property law, nor does our decision disturb the veteran-favorable holdings in *Mansell* or *Howell* in any way.

### 4. Caselaw as to Standing and Apportionment

The Secretary cites *Ferenc* and *Belton* for the proposition that this Court has "binding precedent . . . that holds that a veteran lacks standing to pursue an appeal of an apportionment decision." Secretary's Br. at 5-8 (citing *Ferenc*, 20 Vet.App. at 63-64; *Belton*, 17 Vet.App. at 211). The Secretary also points to this Court's holding in *Redding*, another apportionment case, to argue that Mr. Fuller does not have standing because he cannot demonstrate that he has been injured or has a personal stake in the outcome of this controversy.[9] Secretary's Br. at 7 (citing *Redding v. West*, 13 Vet.App. 512, 514 (2000). As with the Secretary's invocation of the USFSPA, the Court finds these cases inapposite.

In *Belton*, a veteran asserted that the Secretary had entered into a criminal conspiracy to prevent the payment of apportionment to the veteran's mother while the veteran was incarcerated.

---

[8] In a similar vein, the dissent charges that in community property jurisdictions our decision will subject veterans' VA benefits to the claims of their spouse's creditors. *Post* at 32, 34. But as discussed previously, Congress has specifically provided in 38 U.S.C. § 5301(a)(1) that veterans benefits payments are "exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatsoever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1). To the extent that California state law might subject community property to the claims of a spouse's creditors, *see* Cal. Fam. Code § 910, that state law is directly preempted by 38 U.S.C. § 5301(a)(1).

[9] The Court notes that *Redding* was cited in the February 2013 Board decision remanding the veteran's claim. *See* R. at 2177-83.

17 Vet.App. at 209. The veteran petitioned this Court for an order requiring the Secretary to, among other things, pay his mother the apportionment owed to her while he was incarcerated. 17 Vet.App. at 209-10. The Court found that Mr. Belton lacked standing and dismissed the case for lack of jurisdiction, concluding that the veteran did "not have a personal stake in the outcome, nor has he shown that he has been adversely affected by the termination of his mother's apportionment award." *Id.* at 211. These facts are easily distinguishable from Mr. Fuller's case.

First, given that the Fuller marriage has been intact at all times relevant to this appeal, and the fact that Mr. and Ms. Fuller have uniformly expressed mutual agreement as to the proper relief in this case, i.e., an earlier effective date of apportionment benefits, Mr. Fuller, unlike Mr. Belton, has established a legally significant connection to the apportioned benefits through the community property estate that he currently shares with Ms. Fuller. Appellant's Reply Br. at 2-4.

Second, when Mr. Belton filed his petition with this Court, Mr. Belton's mother had successfully filed her own application for apportionment and Mr. Belton's interest was in opposition to his mother's. *Belton*, 17 Vet.App. at 211. By contrast, Mr. Fuller has argued since April 2010 that he submitted the original claim for apportionment on his spouse's behalf and that their interests in this case are in alignment, *see* R. at 2516 ("I submitted the original claim on behalf of my [spouse] . . . [a] lawful and moral obligation of mine . . . as her husband."), and there is evidence that Ms. Fuller is in agreement, R. at 146. Thus, where the apportionment issue in *Belton* involved opposing interests and Mr. Fuller's case involves mutually expressed unity of interest in the apportionment effective date issue, the Court remains unpersuaded that the Court's *Belton* decision on apportionment is determinative here.

The Secretary's argument regarding *Ferenc* fares no better. In *Ferenc* the veteran argued that the apportionment of his benefits to his dependents during his incarceration violated the statute governing the nonassignability of benefits. *Ferenc*, 20 Vet.App. at 60. This Court concluded that Mr. Ferenc had no standing to challenge the apportionment to his dependents because he was unable to demonstrate that he was adversely affected by the apportionment decision—since a statute authorized a reduction in his benefits during his incarceration. *Id.* at 64. In contrast to Mr. Ferenc, Mr. Fuller is not challenging the apportionment —rather, he is arguing for an earlier effective date for the apportionment, and argues that VA's failure to timely facilitate apportionment injured him through the shared community property interest. *See* Appellant's Br. at 7-21; Appellant's Reply Br. at 2-4. Thus, Mr. Fuller's standing situation is significantly distinguishable

from that of Mr. Ferenc.

Turning to the Secretary's argument that *Redding* supports his position, in that case this Court found that, because the veteran's mother was his fiduciary and guardian, the veteran's spouse lacked standing to appeal a denial of a VA claim for dependent spousal aid and attendance benefits. *Redding*, 13 Vet.App. at 514-15. The Court noted that the spouse was previously the veteran's fiduciary but that VA had rescinded her status as fiduciary because of the couple's marital difficulties. *Id.* at 514. Because she was no longer the veteran's VA fiduciary or guardian, the Court held that she had "no personal stake in the outcome of the controversy because, should her claim be successful, the benefit would flow to the veteran, and not to her." *Id.* at 515. Thus, the facts of *Redding* are distinct from the facts of the Fuller case, as Mr. Fuller has cited a valid basis for standing in this case—California community property law. No such basis for standing was asserted in *Redding*. *See* R. at 2600, 2573, 2495, 2447-52.

Thus, the Court agrees with Mr. Fuller that existing caselaw does not foreclose him having demonstrated an "injury-in-fact" in this case: the economic injury arising from the indirect deprivation of the apportioned benefits, which would be considered part of the Fullers' community property under California state law. Indeed, the Court is persuaded by the veteran's contention that the economic harm to the Fullers' community property constitutes the type of actual, "concrete and particularized" harm contemplated by the constitutional standing requirements; accordingly, the Court accepts that VA's refusal to recognize Mr. Fuller's NOD as to the effective date of Ms. Fuller's apportionment payments has resulted in measurable economic harm to Mr. Fuller. *See Lujan*, 504 U.S. at 560.

Accordingly, the Court concludes that the Board's determination as to the question of Mr. Fuller's standing to pursue the appeal in this case is legally correct.[10] Further, the Board provided

---

[10] We agree with our dissenting colleague that in 38 U.S.C. § 7105(b)(2) Congress defined the individuals who can initiate a VA appeal. *See post* at 26-27. His analysis relies on a definition of claimant drawn from *Akard v. McDonough*, 2021 WL 5876031 (Fed. Cir. Dec. 13, 2021) (nonprecedential), which is not binding upon this Court and which is considerably narrower than our longstanding interpretation of the term. *See, e.g., American Legion v. Nicholson*, 21 Vet.App. 1, 5 (2007) (defining claimant as "any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary") (*citing Jarrell*, 20 Vet.App. at 330)). But even were we to accept the *Akard* definition, Mr. Fuller would still qualify. *See Akard*, 2021 WL 5876031 at *3 ("The ordinary meaning of 'claimant' under [38 U.S.C. § 7105(b)(2)] does not encompass any person who files a claim but, rather, refers to the person who would receive the benefit if granted."). As we have established, under California law Mr. Fuller and Ms. Fuller as a marital community would be in receipt of the claimed apportionment benefits at issue here. Thus, Mr. Fuller would fit within the definition of claimant advanced in *Akard* and would have standing to file an NOD as to the underlying Board decision.

14

adequate reasons or bases to support its determination. *See generally* R. at 7.

### III. THE EFFECTIVE DATE OF APPORTIONMENT

Having established that the Board was correct to conclude that Mr. Fuller had standing to appeal the September 2009 rating decision, we turn to the merits of the Board's effective date determination. Congress has provided a general rule that the effective date of an award of benefits "shall not be earlier than the date of receipt of application therefor." 38 C.F.R. § 5110(a) (2021). The Board's determination of the proper effective date is a finding of fact that the Court reviews under the "clearly erroneous" standard. *See Costa v. West*, 11 Vet.App. 102, 105-06 (1998). The Board must support its effective-date determination with adequate reasons or bases that enable the claimant to understand the precise basis for that determination and facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).

During the period relevant to this appeal, VA sent Ms. Fuller a notice letter requesting an itemized list of average monthly expenses and soliciting information regarding her monthly income and the value of her owned property. *See* R. at 2600 (April 22, 2004, RO letter to Ms. Fuller).[11] The notice letter requested that she furnish this evidence within 60 days from the date of receipt of the notice letter. *Id*. The notice letter informed her that where VA did not receive the requisite information to develop the claim within one year, VA "will assume that you do not intend to file for an apportionment and no further action will be taken." *Id*.

Absent clear evidence to the contrary, courts will generally presume that public officials have properly discharged their duties, including mailing required notice documents. *See Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004); *Crain v. Principi*, 17 Vet.App. 182, 186 (2003); *Schoolman v. West*, 12 Vet.App. 307, 310 (1999). This "presumption of regularity" may be triggered by a showing of an evidentiary predicate or legal duty requiring government action. *See Romero v. Tran*, 33 Vet.App. 252, 259 (2021). Once triggered, an individual may rebut the presumption by producing clear evidence that the government's practices are not regular or that regular practices were not followed. *Ashley v. Derwinski*, 2 Vet.App. 307, 309 (1992); *see Romero*, 33 Vet.App. at 260.

---

[11] In March 2015, the requirement that a claimant file a claim for apportionment on VA Form 21-0788, Information Regarding Apportionment of a Beneficiary's Award, went into effect.

However, the presumption does not attach when an administrative process appears irregular on its face. *Wise v. Shinseki*, 26 Vet.App. 517, 525 (2014). In the case of facial irregularity, courts may reverse or invert the presumption to assume that "that which appears irregular is in fact irregular" and shift the burden to the government "to disprove the appearance of irregularity." *Romero*, 33 Vet.App. at 261; *see United States v. Roses Inc.*, 706 F.2d 1563, 1567 (Fed. Cir. 1983); *Wise*, 26 Vet.App. at 525. As the Court explained in *Romero*, "to presume regularity in the face of an 'appearance of irregularity' would defy logic" and "be redundant and wasteful of resources" because it would require the party challenging the presumption "to supply more evidence of irregularity when the appearance of irregularity is apparent." 33 Vet.App. at 260-61 (quoting *Wise*, 26 Vet.App. at 527)). Significantly, "[w]hether a court or challenger identifies it, clear evidence of irregularity [] robs the presumption of regularity of its power." *Id.* at 261.

In the decision on appeal, the Board denied an earlier effective date for apportionment benefits because it found that no apportionment claim had been filed prior to July 9, 2009, and that August 1, 2009, constitutes the earliest effective date legally possible. R. at 11. The Board acknowledged that Ms. Fuller was eligible to receive an apportionment earlier than August 2009, as evidenced by VA's correspondence with the Fullers in March and April 2004. R. at 8. But according to the Board, until Ms. Fuller replied to the April 2004 VA notice letter soliciting her financial information, or further provided evidence of entitlement to apportionment, no earlier effective date for apportionment was authorized. R. at 8-10.

The Board considered the Fullers' assertion that Ms. Fuller did not receive the April 2004 VA letter, as well as her statement that she had no contact from VA until 2009. However, the Board applied the presumption of regularity, concluded that VA in April 2004 properly sent Ms. Fuller notice of her right to apportionment, and determined that the presumption was not rebutted by clear evidence to the contrary. R. at 9. The Board noted that Ms. Fuller's address was provided by Mr. Fuller in March 2004, one month before VA sent Ms. Fuller the notice letter. R. at 10. The Board observed that VA's April 2004 correspondence to Ms. Fuller was not returned as undeliverable. *Id.* To the extent that the Board considered whether Mr. Fuller's March 2004 VA Form 21-686c should be construed as an informal claim for apportionment, the Board concluded that any such claim was abandoned because Ms. Fuller failed to respond within one year to VA's request for financial information. R. at 11.

The Secretary argues that VA had no duty to Mr. Fuller in the development of the apportionment claim because he does not have standing as to the apportionment issue. Secretary's Br. at 5-16. The Secretary further argues, to counter Mr. Fuller's argument that Ms. Fuller did not receive VA's April 2004 letter, that an assertion that a mailing was not received is not sufficient, alone, to rebut the presumption of regularity. Secretary's Br. at 16-20; *see Tellex v. Principi*, 15 Vet.App. 233, 238 (2001). Mr. Fuller argues that, as a direct result of conditions related to his incarceration, he was unable to provide VA with correct information for Ms. Fuller when he completed the VA Form 21-686c in March 2004. *See* Appellant's Br. at 16-18.

In its decision the Board assumed, with no analysis, that the presumption of regularity applied to VA's April 2004 mailing. *Contra Romero*, 33 Vet.App. at 259, 262-268 ("Evidentiary presumptions typically apply only upon a showing of predicate evidence . . . *either* evidence or law can trigger [the presumption of regularity]."). But Mr. Fuller points to factors related to his incarceration that he claims obviously would impede his ability in 2004 to provide a correct current address for his spouse—namely, the length of his incarceration before he was asked for Ms. Fuller's address, that he was incarcerated in Missouri while his spouse resided in California, and the conditions of his incarceration generally, which led to limited contact with his spouse. Mr. Fuller argues that these evident factors related to his incarceration put VA on notice that he was not appropriately situated to provide current contact information for Ms. Fuller. He argues that despite these obvious impediments to communication between himself and Ms. Fuller, VA did not "tailor [its] assistance to the peculiar circumstance of [his] confinement," and instead relied exclusively on an outdated address that he unwittingly provided. Appellant's Br. at 16-17; *see Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991). The Court agrees with Mr. Fuller.

As he argues, the record contains evidence of circumstances related to Mr. Fuller's incarceration that the Board did not discuss, which may be viewed as irregular and prevent the presumption of regularity from attaching in this case. The unique circumstances here include the long period of Mr. Fuller's incarceration before he was requested by VA to provide Ms. Fuller's current address, Ms. Fuller's residence in California far from the site of Mr. Fuller's incarceration in Missouri, and the circumstances of incarceration generally, which limited his contact with Ms. Fuller. The Board's failure to address these circumstances is significant because the circumstances may indicate irregularity in VA's acquisition of Ms. Fuller's personal contact information and

mailing of the April 2004 notice letter, irregularities that impact whether the presumption of regularity attaches here.

The Board's deficiency in this regard renders inadequate its reasons or bases for finding that the presumption of regularity applied and that an earlier effective date is precluded. *See Robinson v. Peake*, 21 Vet.App. 545, 552-56 (2008) (holding that the Board has a duty to address all issues reasonably raised either by the appellant or by the contents of the record); *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *Caluza*, 7 Vet.App. at 506. This error is sufficient to warrant remand. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

Relatedly, per *Quirin*, the Court notes the troubling opportunities for error in the establishment and development of apportionment claims, as evinced by the Fullers' experience. *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (noting that the Court may provide guidance to the Board after determining that remand is warranted). Typically, outside of the apportionment context, VA benefits claims are initiated by a veteran, a survivor or dependent of a veteran, or an individual with current knowledge of the potential claimant's contact information. But the process used to acquire a potential apportionee's contact information does not include the potential apportionee, their representative, or even necessarily an individual with current contact information. Instead, that process relies on the veteran or the current recipient of VA benefits. This individual may or may not be aware of the potential apportionee's current contact information, may have been incarcerated for many years prior to being asked for a potential apportionee's address, or may have a personal interest not in alignment with the interest of the potential apportionee, *see, e.g.*, *Ferenc,* 20 Vet.App. at 60 (concerning a veteran who challenges the apportionment of his VA benefits to his dependents). Such a system evokes fair process concerns. *See Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020) ("[E]ven in situations where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required when 'viewed against [the] underlying concepts of procedural regularity and basic fair play' of the VA benefits adjudicatory system." (*quoting Thurber v. Brown*, 5 Vet.App. 119, 123 (1993))).

On remand, Mr. Fuller is free to submit, and the Board must consider, additional arguments and evidence, including the arguments raised in his briefs to this Court. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutcherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court reminds the Board that "[a] remand if meant to entail a critical examination of

the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

### IV. CONCLUSION

Upon consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the November 20, 2018, Board decision denying entitlement to an effective date earlier than August 1, 2009, for an apportionment of VA benefits to Ms. Beverly Fuller is SET ASIDE, and that matter is REMANDED for further development, if necessary, and readjudication consistent with this decision.

ALLEN, *Judge*, dissenting: The majority concludes that appellant has a sufficient legal interest in his *wife's* apportioned benefits to allow *him* to contest the effective date VA assigned for *her* benefits. Because I believe Mr. Fuller had neither a statutory right to appeal to the Board in this case nor a legally cognizable interest in his wife's apportioned benefits to the extent that matters given the statutory problem,[1] I would vacate the Board's decision on appeal and remand with instructions to dismiss appellant's appeal. So, I respectfully dissent.[2]

This dissent proceeds as follows. I begin by laying out the salient factual background and procedural history. I then deal with certain preliminary issues that, if they had merit, could prevent the Court from reaching the issue on which the Board ruled. Specifically, I explain why I agree with the majority that we are not precluded from reviewing the Board's finding that appellant had the requisite personal interest to contest the assignment of the effective date for his wife's benefits either because it is a purportedly favorable factual finding or under the law of the case doctrine (or any other concept of preclusion). After doing so, I turn to why I believe we must vacate the Board's decision. First, I discuss why a veteran's interest in disability benefits is distinct from the interest a veteran's spouse (or other dependent) may acquire in apportioned benefits. That establishes an

---

[1] People often use the term "standing" to refer to an interest of a claimant before the Board. I am sure I have done so at times as well. That is fine as shorthand as long as one understands that the body of caselaw concerning true standing under Article III of the Constitution does not apply to the Board as an administrative body. Rather, what matters for the Board is that a person have the requisite personal interest to proceed before the Board that is reflected in Congress' specification of who may appeal initial decisions to the Board. The Federal Circuit has recently made this point. *See Akard v. McDonough*, 2021 WL 5876031 at *3-*4 (Fed. Cir. Dec. 13, 2021). So, the discussion of "standing" here should appropriately be focused through that lens.

[2] Because I do not believe the Board had jurisdiction to issue its decision, and therefore we lack jurisdiction, I express no views on the majority's decision on the merits of the appeal.

important foundational principle. I then explain that appellant does not come within the class of persons Congress has allowed to appeal adverse administrative decisions to the Board in the context of the decision the Agency rendered concerning his wife's apportioned benefits.

The lack of a statutory basis for appellant to appeal to the Board should end the matter. Nevertheless, because the majority focuses on a different question, I proceed to explain why veterans disability benefits[3] as a general matter are not subject to a state's community property law, the legal basis appellant asserts for why he has the requisite interest in his wife's apportioned benefits and the one on which the Board and the majority rely. Appellant could prevail, then, only if there is something about apportioned benefits that make them subject to community property laws when veterans disability benefits generally are not. I conclude that there is nothing that does so, and, indeed, that apportioned benefits are even less likely to be subject to state community property law than other forms of benefits. Finally, even though the veteran "wins" today, I briefly discuss why the majority's conclusion on the question concerning his right to appeal a determination about his *wife's* benefits has the serious potential to harm veterans in the large run of cases.

## I. FACTUAL AND PROCEDURAL BACKGROUND[4]

Appellant served the Nation honorably in the United States Air Force from October 1958 to April 1962.[5] Following a felony conviction, appellant was incarcerated (in Missouri) from November 1999 to August 2014.[6] In February 2004, VA granted appellant service connection for a left elbow disability, assigning a 10% disability rating, effective June 2002.[7] Because of his incarceration, VA notified appellant that he would only be entitled to receive one-half of his benefits during his incarceration and that his withheld benefits could be apportioned to an eligible

---

[3] I limit my consideration to VA disability benefits because that is what is before the Court. It may be that other VA benefits could be subject to a different analysis than that I describe here, a question on which I take no position. Whenever I use the term "veterans benefits" in this opinion, I mean it to refer to veterans disability benefits whether I use the "disability" qualifier or not.

[4] I do not disagree with the majority's more fulsome recitation of the facts and believe what I set forth here is consistent with it. I include this section merely for ease of reading the dissent.

[5] R. at 1621.

[6] R. at 2097.

[7] R. at 2612-14.

dependent.[8] Appellant identified his spouse, Beverly Fuller, as his dependent and stated that he wanted her to receive the withheld amount of his benefits.[9] There is no dispute that Mrs. Fuller resides in California—a community property state.

In July 2009, VA granted appellant's spouse apportioned benefits and assigned August 1, 2009, as the effective date for that award, the date appellant's spouse filed a written request for those apportioned benefits.[10] Appellant, not his wife, contested the effective date assigned to Mrs. Fuller's apportioned benefits[11] and ultimately appealed to the Board.[12] Appellant did all of this in his own name. Mrs. Fuller has never personally contested the effective date VA assigned to her benefits (or anything else about the award for that matter).

In September 2012, the Board remanded the matter for VA to comply with all procedural requirements for contested claims because the apportioned benefits belong to appellant's spouse, not appellant himself.[13] During development on remand, appellant's spouse submitted a letter to VA indicating that she considered appellant was "most knowledgeable and capable" with respect to her claim.[14]

In November 2016, the Board issued a decision in which, in pertinent part, it found that appellant lacked "standing" to pursue the appeal because the apportioned benefits at issue belonged to his spouse and not him (i.e., he had no personal stake in the apportioned payments).[15] He appealed this decision to the Court and in 2018 we remanded the matter in accordance with the Secretary's concession that the Board failed to discuss whether California state community property law conferred "standing" upon appellant so that he could challenge the effective date of the apportioned benefits award to his wife on his own behalf.[16]

---

[8] R. at 2605-09.

[9] R. at 2603-04.

[10] R. at 2556-57.

[11] R. at 2549.

[12] R. at 2494-95.

[13] R. at 2447-52.

[14] R. at 146.

[15] R. at 2066-76.

[16] *See Fuller v. O'Rourke*, No. 16-4106, 2018 U.S. App. Vet. Claims LEXIS 767 at *10-*11 (June 6, 2018).

In November 2018, the Board issued the decision on appeal.[17] The Board was persuaded by appellant's argument that because his spouse lives in California (a community property state) he has a property interest in the marital estate and therefore, he had "standing."[18] The Board then went on to deny the claim for an earlier effective date on the merits. This appeal followed.

## II. THE COURT'S JURISDICTION

I begin with a couple of housekeeping matters that could prevent the Court from considering the question whether appellant had a right to appeal to the Board concerning his wife's apportioned benefits award. First, I agree with the majority[19] that, despite appellant's argument to the contrary, we are not precluded from addressing the issue of his legal interest in his wife's apportioned benefits under *Medrano v. Nicholson*.[20] In *Medrano*, we held that "[t]he Court is not permitted to reverse findings of fact favorable to a claimant."[21] But the conclusion the Board reached about appellant's legal interest in his wife's apportioned benefits is *not* a factual determination. Whether a claimant has "standing," or more accurately framed here, whether he has a statutory right to appeal to the Board in this case, is a legal issue.[22] So, *Medrano* is no bar to addressing the question of the sufficiency of appellant's interest in his wife's apportioned benefits and whether he has a statutory right to appeal the decision concerning his wife's apportioned benefits.[23]

Second, it is true that in the Court's previous remand of this matter it implicitly accepted that state law could be relevant to whether appellant had a legally cognizable interest in his wife's

---

[17] R. at 4-14.

[18] R. at 7.

[19] *See ante* at 7-8.

[20] *See* Appellant's Reply Br. at 2-3.

[21] 21 Vet.App. 165, 170 (2007).

[22] *See ante* at 7.

[23] I acknowledge that there may be some true factual findings the Board could make as part of its legal analysis of "standing" that could be subject to *Medrano*, assuming that concept has any legal relevance to matters before the Board. For example, here the Board found that appellant's spouse resides in California. Such an embedded factual finding might – *might* – be beyond our ability to review even in the context of assessing our jurisdiction. I need not explore the contours of this question here because nothing turns on it in terms of the resolution of appellant's appeal.

apportioned benefits.[24] After all, if that was not the case, a remand to have the Board address that question would have been meaningless. But the issue of "standing" to proceed before the Board (and appellant's concomitant statutory right to appeal to the Board in the first place) is critical to the Court's jurisdiction because our jurisdiction is tied to that of the Board.[25] And we always have an independent obligation to assess our jurisdiction.[26] This is true even if a prior Court decision in the appellate process assumed that standing or a statutory right to appeal existed or could exist.[27] Because these issues go to our subject matter jurisdiction, the law of the case doctrine or other principles of preclusion are not bars to reconsideration of those questions.[28] Simply put: If we don't have jurisdiction, we don't have jurisdiction and we can't ignore that reality.

### III.  APPELLANT'S INTEREST

Having addressed these various preliminary matters, I'll now explain why appellant does not have a legally cognizable interest in his wife's apportioned benefits sufficient to allow him to mount the challenge he does here and that he did before the Board. As will become apparent, not only is my ultimate conclusion different from that of the majority, the reasoning by which I reach my conclusion diverges greatly from how the majority reaches its result.

The Court's authority to adjudicate appeals is governed by 38 U.S.C. §§ 7252(a) and 7266(a). Section 7252(a) establishes that the Court "shall have exclusive jurisdiction to review decisions of the [Board.]" Section 7266(a) states that "a person adversely affected by such a decision" may file a Notice of Appeal. But to be "a person adversely affected" by a Board decision that denied an earlier effective date for his spouse's apportioned benefits, appellant must have been an appropriate person to appeal the initial adverse determination concerning his wife's benefits in

---

[24] *Fuller*, 2018 U.S. App. Vet. Claims LEXIS 767 at *10-*11.

[25] *See* 38 U.S.C. 7252(a).

[26] *See, e.g., Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019).

[27] *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, (1990) ("'Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.'"(*quoting Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

[28] *See Arizona v. California*, 460 U.S. 605, 618, (1983); *Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009) (quoting 18B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 4478.5, at 790 (2d ed. 2002)).

the first place.[29] If appellant is not within the class of persons who may appeal such an adverse determination, he lacks a sufficiently cognizable legal interest in those benefits to have proceeded before the Board. And in that case, we lack jurisdiction over the matter because there is, effectively, no valid Board decision to review.[30] And that's precisely the situation we have.

### A. A veteran's interest in benefits is distinct from a spouse's interest in apportioned benefits.

Let's start by considering the nature of apportioned benefits. Congress has provided that a veteran in receipt of VA disability compensation benefits who is incarcerated for more than 60 days for a felony will have his or her benefits reduced for the period of incarceration.[31] This is why appellant's disability compensation benefits were reduced. Congress has also provided that when a veteran's disability compensation has been reduced based on incarceration, all or part of the reduced compensation may be apportioned to certain of the veteran's dependents.[32] This is why Mrs. Fuller was entitled to receive apportioned benefits.

This Court has held that, once VA has reduced an incarcerated veteran's compensation payments and apportioned those benefits to another party, "the [veteran] no longer has a personal stake in the apportioned payments" and can therefore no longer show the requisite personal stake in the outcome to establish "standing" with respect to issues concerning the apportioned benefits.[33] In *Belton v. Principi*, in the context of a petition for extraordinary relief, the Court held that although apportioned benefits arise from a veteran's benefits, "an apportionment is an entity legally

---

[29] Appellant's spouse is not a party to this appeal and has not sought to intervene.

[30] *See Snyder v. Principi*, 15 Vet.App. 285, 299 (2001) ("[A]lthough it may be the general rule that there is no case or controversy as to a [Board] determination that was favorable to an appellant, that is not the case where the [Board] lacked jurisdiction to make the determination in the first instance. Under such circumstances, we can—indeed, we are generally obligated to—examine whether the [Board] had jurisdiction to address the issue."); *see also Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("[I]t is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits, that a potential jurisdictional defect may be raised by the court or tribunal, *sua sponte* or by any party, at any stage in the proceedings, and, once apparent, must be adjudicated.").

[31] *See* 38 U.S.C. § 5313.

[32] 38 C.F.R. § 5313(b)(1); 38 C.F.R. § 3.665(e)(1).

[33] *Ferenc v. Nicholson*, 20 Vet.App. 58, 64 (2006); *see also Belton v. Principi*, 17 Vet.App. 209, 211 (2003) (an apportionment is an entity legally separate from a veteran's benefits and dependents who file for apportionment seek to exercise their own rights).

separate from those benefits."[34] The petitioner in *Belton* was an incarcerated veteran contesting the termination of his mother's apportionment award. The Court concluded that the petitioner had no "legally significant connection to the apportioned benefit." [35] Therefore, the veteran had no personal stake in the outcome, meaning that he lacked standing to appeal before a court.[36] The Court dismissed the petition for lack of jurisdiction. Three years later, in *Ferenc v. Nicholson*, the Court applied the reasoning in *Belton* in the context of a direct appeal of a Board decision, holding that "[o]nce the reduction of benefits has been authorized, the appellant no longer has a personal stake in the apportioned payments."[37] So, there is no question that appellant's interest in his veterans disability compensation is legally distinct from Mrs. Fuller's interest in her apportioned benefits.[38] And I note that the Federal Circuit has recently accepted this distinction from our decisions in *Belton* and *Ferenc*, albeit in a non-precedential decision.[39]

### B. Appellant is not among the class of persons Congress has allowed to appeal to the Board.

In order to contest a decision of an agency of original jurisdiction within VA, such as the one concerning appellant's wife's apportioned benefits, Congress has provided that a person must file a Notice of Disagreement (NOD).[40] But not anyone may file an NOD to bring a matter before the Board. Congress has limited the class of persons who are statutorily authorized to do so to the following: "the claimant, the claimant's legal guardian, or such accredited representative, attorney,

---

[34] 17 Vet.App. 209, 211 (2003).

[35] *Id.*

[36] *Id.*

[37] 20 Vet.App. 58, 64 (2006).

[38] The Secretary's arguments notwithstanding, *see* Secretary's Br. at 5-6, *Belton* and *Ferenc* do not resolve the question before the Court. These are certainly significant decisions, but in neither case did the Court address whether something beyond Federal law, such as state community property rules, could provide a veteran with a sufficient legal interest in an apportionment case such that he or she had "standing" to challenge the effective date assigned to an award of apportioned benefits to a dependent. That issue simply was not presented in those cases, but it is here. Appellant's theory is precisely that California's community property law gives him an interest in his wife's apportioned benefits sufficient for him to raise those matters. *See e.g.,* Appellant's Reply Br. at 3-4. Moreover, *Belton* and *Ferenc* dealt with whether a person could appeal a Board decision to the Court as opposed to the precise question we face here concerning whether a person may obtain Board review and then review in this Court. The Federal Circuit recently recognized this latter distinction between these cases and a situation extraordinarily similar to the one we face today. *See Akard*, 2021 WL 5876031 at *3.

[39] *See Akard*, 2021 WL 5876031 at *2-*3.

[40] *See* 38 U.S.C. § 7105.

or authorized agent as may be selected by the claimant or legal guardian."[41] Appellant does not come within this group.

The Federal Circuit recently considered a case extraordinarily similar to this one, providing important guidance on the question we face today.[42] In *Akard*, an incarcerated veteran appealed an RO decision that had denied his father apportioned benefits.[43] The Board dismissed the appeal because the veteran's father had not appealed and the veteran lacked a personal interest in the apportioned benefits that would have been paid to his father.[44] Our Court affirmed the Board's decision in a memorandum decision.[45] The veteran appealed.

The Federal Circuit affirmed our decision. The key passage from *Akard* is:

> As a statutory matter, an appeal to the Board must be initiated by the "claimant"—or "the claimant's legal guardian, or such accredited representative, attorney, or authorized agent as may be selected claimant or legal guardian." The ordinary meaning of "claimant" under that statutory provision does not encompass any person who files a claim, but rather, refers to the person who would receive the benefit if granted; otherwise, the specific statutory list of non-claimants who may appeal would make little if any sense. Under that reading, the statute limits an appeal to an apportionment denial to the person who would receive the apportionment and the short list of statutorily authorized stand-ins for that person—so that the veteran cannot initiate an appeal to the Board from a denial of an apportionment claim unless the veteran qualifies as one of the few people (such as a legal guardian) allowed to do so on behalf of the potential apportionment recipient.[46]

*Akard*'s reasoning is equally applicable to Mr. Fuller's situation. To begin with, appellant is clearly not a "claimant" for purposes of seeking Board review. As outlined above, *Belton* and *Ferenc* leave no doubt that a spouse (or other dependent) is the "claimant" for purposes of

---

[41] 38 U.S.C. § 7105(b)(2).

[42] *See Akard*, 2021 WL 5876031. I recognize that *Akard* is non-precedential and, therefore, not binding on us. Nevertheless, in my view, the court's analysis is highly instructive. The majority concludes that *Akard* is inconsistent with our precedent and, even if applicable, Mr. Fuller would qualify. *See ante* at 14 n.10. As I've discussed, *Akard* tracked the statute providing for those people who may appeal. Moreover, Mr. Akard and Mr. Fuller are different only if community property principles make them so. As I explain below, those principles do not alter the analysis.

[43] *Akard*, 2021 WL 5876031 at *1.

[44] *Id*.

[45] *Akard v. Wilkie*, No. 19-6262, 2020 WL 5200711 (Vet. App. Aug. 27, 2020).

[46] *Akard*, 2021 WL 5876031 at *3 (quoting section 7105(b)(2); citations omitted).

apportioned benefits. It is equally clear that appellant is not his wife's legal guardian. There is no evidence of such a legal relationship in the record, and appellant's counsel expressly admitted at oral argument that Mrs. Fuller was not the subject of a legal guardianship.[47] And finally, appellant has consistently maintained that he appealed VA's decision concerning his wife's apportioned benefits on his own behalf and not as an agent for his wife. Not surprisingly then, the Board never mentions agency as a basis for its decision, appellant advanced no argument along those lines before the Board or us, and the majority doesn't address the question at all.

This should be the end of the matter. Not to be flippant, but this is a case of three strikes and you're out. Just as in *Akard*, appellant does not fit within the three categories of persons that Congress provided could file an NOD concerning a claim concerning Mrs. Fuller's apportioned benefits. Only Congress can change that decision. We should follow the Federal Circuit's logic, even though it does not technically bind us, and carry out Congress' unambiguous command. And to be clear, the only salient difference between this case and *Akard* is that there was no question concerning state community property law before the Federal Circuit. But that distinction is meaningless. Under our Federal system of government, California—or any other state whether adopting community property principles or not for that matter—could not alter what Congress enacted in section 7105 in terms of who could appeal to the Board.[48] That question is one entirely of Federal law, so the fact that our case concerns a situation in which community property law is in the background does not change the import of *Akard*.

### C. Leaving aside the statutory ability to appeal, veterans disability benefits are not subject to state community property laws.

As I've said, our analysis should end with the plain language of section 7105(b)(2). But if we look more broadly to how veterans benefits are treated in the Federal courts, the conclusion that we cannot hear this appeal becomes even more apparent. As we'll see, the majority's conclusion in this case runs afoul of these broader principles. So, I proceed to consider whether veterans benefits are generally subject to state law property principles, most relevant here, community property rules.

---

[47] *Fuller v. Wilkie*, U.S. Vet. App. 18-7000 (oral argument held Nov. 6, 2020, https://www.youtube.com/watch?v=UJvKlN-vDJM) at 1:12:00-1:14:50.

[48] Although I believe it is ultimately irrelevant to the resolution of this appeal, I'll return to community property principles below.

We are not writing on a blank slate when considering whether state community property law applies to veterans disability benefits as a general matter. The Supreme Court of the United States has provided important guidance on this question in both *Mansell v. Mansell*[49] and then again only a few years ago in *Howell v. Howell*.[50] To understand why these decisions are so significant, I need to explain the background that led to *Mansell* and then *Howell* in some detail.

In 1981, the Supreme Court decided *McCarty v. McCarty*.[51] That case dealt with whether military retirement pay veterans were receiving after they left military service was subject to state community property laws.[52] The Court held that such payments were not subject to state community property division because they constituted a personal entitlement based on military service that Congress did not intend to be subject to such state laws.[53]

Congress reacted swiftly to *McCarty*. In 1982, it enacted the Uniformed Services Former Spouses' Protection Act (USFSPA) providing, in relevant part, that states could make military retirement pay subject to state community property laws.[54] The Supreme Court considered the impact of the USFSPA in *Mansell*. Federal law allows a person receiving military retirement pay to elect to waive a portion of that pay in order to receive VA disability benefits.[55] The Supreme Court had to consider whether the USFSPA's provisions allowing states to make military retirement pay subject to community property division also allowed VA disability benefits taken in lieu of that retirement pay to be treated as community property as well.[56] The Court held that VA disability benefits taken in lieu of military retirement pay were not subject to community property division despite the USFSPA.[57] The Court reasoned that the USFSPA defined what was

---

[49] 490 U.S. 581 (1989).

[50] 137 S. Ct. 1400 (2017).

[51] 453 U.S. 210 (1981).

[52] *Id*. at 211-15.

[53] *Id*. at 224-25.

[54] 10 U.S.C. § 1408(c)(1).

[55] *Mansell*, 490 U.S. at 583-85. As the Supreme Court noted in *Howell*, Congress was concerned that veterans not receive both military retirement pay as well as VA disability benefits because that would be double-dipping so to speak. *Howell*, 137 S. Ct. at 1402-03. By allowing a veteran to waive retirement pay to receive VA benefits, Congress conferred an important advantage because retirement pay is taxable while VA disability benefits are not. *Id*. at 1403.

[56] *Mansell*, 490 U.S. at 584-86.

[57] *Id*. at 588-89.

subject to community property principles in a "precise and limited" manner that did not include VA disability payments in lieu of retirement pay.[58] Therefore, even though Congress reacted so quickly to address *McCarty*, the Court in *Mansell* concluded that federal preemption of state community property law still applied with respect to VA disability benefits taken in lieu of military retirement pay.[59]

And *Mansell* was not an aberration. In 2017, the Supreme Court decided *Howell* in which it considered the continued viability and scope of *Mansell*. The issue in *Howell* concerned an Air Force veteran and his spouse who agreed to divorce shortly before the husband was to retire from the military.[60] In 1991, an Arizona state court issued a divorce decree (based on the parties' agreement) that provided that Mrs. Howell would be entitled to 50% of Mr. Howell's military retirement pay once he began to receive it.[61] Mr. Howell retired from the Air Force in 1992 and he and his wife began to split his retirement pay.[62]

In 2005, VA granted Mr. Howell service connection for a shoulder condition rated at 20% disabling.[63] He elected to waive the portion of his retirement pay equal to his VA disability benefits, which resulted in a decrease in the amount of money Mrs. Howell received.[64] Mrs. Howell then moved in Arizona state court to enforce the terms of the original divorce decree.[65] Affirming the trial court's enforcement decision, the Arizona Supreme Court determined that Mrs. Howell was entitled to have the original decree enforced by having Mr. Howell make up the difference between what she was receiving before Mr. Howell began receiving VA disability benefits and what she was receiving after he made an election to waive a portion of his retirement pay.[66] The Arizona Supreme Court distinguished *Mansell* on the ground that Mr. Howell made his election to receive VA disability benefits after the divorce decree was in place, as opposed to what

---

[58] *Id.*

[59] *Id.*

[60] *Howell*, 137 S. Ct. at 1404.

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *In re Marriage of Howell*, 361 P.3d 936, 941 (Ariz. 2015).

happened in *Mansell* when the election had been made before the divorce decree at issue there was entered.[67]

The Supreme Court of the United States reversed the Arizona Supreme Court, stating that "*Mansell* determines the outcome here."[68] In reaffirming *Mansell*, the Court reiterated that Congress had not provided for the division under state community property law of VA disability benefit payments in the context of the waiver of military retirement pay.[69] It declined to limit *Mansell* by the timing of the election to waive military retirement pay.[70] In addition, it rejected the argument that all the Arizona courts had done was make Mrs. Howell whole through indemnification of her vested rights, something the Court deemed to be a difference that was "semantic and nothing more."[71]

I do *not* claim that *Howell* and *Mansell* technically bind us on the precise question before the Court. Those cases did not deal with VA benefits standing alone, what is at issue here, because Mr. Fuller is not in receipt of military retirement pay. But we are talking about the Supreme Court after all and today's decision is difficult if not impossible to square with the Supreme Court's logic in *Howell* and *Mansell*. There is nothing here to show the type of affirmative congressional action the Supreme Court demanded to subject a personal *Federal* entitlement to *state* community property law. And that is especially so given the plain language of section 7105 I discussed above.

Indeed, far from there being authority for finding that VA disability benefits are subject to state law division, and leaving aside section 7105, there is a statute that points in exactly the opposite direction, 38 U.S.C. § 5301.[72] Section 5301 is entitled "[n]onassignability and exempt status of benefits" and provides, in part, as follows:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal

---

[67] *Id.* at 939.

[68] *Howell*, 137 S. Ct. at 1405.

[69] *Id.*

[70] *Id.* at 1405-06.

[71] *Id.* at 1406.

[72] The Supreme Court discussed this provision in *Mansell* although at the time it was codified at 38 U.S.C. § 3101. *See Mansell*, 490 U.S. at 581-82.

or equitable process whatsoever, either before or after receipt by the beneficiary.[73]

Again, as with the Supreme Court's decisions I've discussed, I do not claim that section 5301 is definitive. It does not specifically address division of or interest in property under a state's domestic relations laws such as those concerning community property. At the same time, it certainly does not support an affirmative congressional decision to make VA benefits subject to state community property law, something the Court in *Howell* and *Mansell* requires.[74] Rather, it reflects Congress' decision *not* to do so, at least as a general matter.

Returning to the Supreme Court's decisions, it just makes no sense that Congress would preclude states from dividing VA disability benefits being received in lieu of military retirement pay but at the same time allow VA disability benefits that are being received without regard to military retirement pay to be subject to such division. I would not so lightly conclude that Congress has acted in such an illogical manner. There is no reason to believe that Congress would want to preclude the application of community property principles in one situation but not the other. To paraphrase the Supreme Court in *Howell*, it be would be an exercise in semantics to tie Federal preemption concerning veterans disability benefits to whether a veteran happened to also be receiving military retirement pay. Both veterans would be receiving the same benefit no matter how one classified them. And we know from *Howell* and *Mansell* that Congress did not want community property law to apply in the context of the waiver of military retirement pay. Therefore, I conclude that it has taken the same approach to VA disability benefits standing alone. In short, VA disability benefits are not, as a general matter, subject to state community property laws.

The majority opinion seeks to avoid *Howell* and *Mansell* in two principal ways. First, it focuses on the fact that these cases both dealt with the USFSPA while Mr. Fuller's appeal does not.[75] This is certainly true. However, as I discussed above, that is a distinction without a difference. It would make little sense to allow community property law to apply to disability benefits when someone is not also entitled military retirement pay but preclude such application when they are. The majority's second means of distinguishing these Supreme Court decisions is

---

[73] 38 U.S.C. § 5301(a)(1).

[74] *See, e.g., Howell*, 137 S. Ct. at 1405-06; *Mansell*, 490 U.S. at 587-89.

[75] *See, e.g., ante* at 10-11.

that they concerned the application of state community property law at the time of a divorce.[76] Again, that is an accurate description of the decisions. However, I fail to see how that matters. If appellant has an interest under state community property law *now* sufficient to provide him an interest in his wife's benefits, he would have such an interest at the time of any divorce.[77] And that would lead to a division of the community property that the majority holds includes veterans benefits, something at odds with the Supreme Court's decisions. I do not see how one can avoid that fact. Moreover, if the majority's pre-divorce/divorce distinction did matter, it would be because *Congress* made it so. But there is nothing in the majority opinion to demonstrate that *Congress* meant to subject veterans benefits to state law in one situation but not the other. Indeed, the majority appears to proceed on the basis that we must find something to *exclude* veterans benefits from community law. But that turns the law on its head. *Howell* and *Mansell* required us to find congressional authorization to *include* the benefits in community property. In sum, the majority's attempts to avoid Supreme Court guidance don't carry the day because even though it describes the factual situation in which the Fullers find themselves, it points to nothing to suggest that *Congress* determined that in such a situation any State could subject a Federal benefit to state-law property principles.

### D. Nothing about apportioned benefits makes them subject to state community property laws.

If it is the case that veterans disability benefits are not subject to state community property law as a general matter, we then must consider whether there is something about apportioned benefits in particular that makes them different for that purpose. There isn't. In fact, there is strong reason to believe that apportioned benefits such as those with which we deal today are even *less*

---

[76] *Id*. at 11.

[77] I do not disagree with the majority's point that state community property laws affect matters that go beyond division at the time of a divorce. *See ante* at 6-7. But that does not matter here and, if anything, calls the majority's conclusion into more doubt. To begin with, as I noted, if veterans benefits are subject to community property laws during a marriage, they would be subject to such laws at the time of divorce. And even if we leave that point aside, I am concerned about the potential implication of the majority's holding assuming there is some way to prevent veterans benefits from being subject to division at divorce even if they qualify as community property before such an event. For example, community property is generally subject to claims of creditors. *See* CAL. FAM. CODE § 910. So, on the majority's logic, a veteran receiving VA disability benefits could have 50% of those benefits subject to the claims of his or her spouse's creditors. That is a remarkable and troubling prospect for which the majority provide nothing in terms of the specific type of congressional authorization that *Howell* and *Mansell* demand.

likely to be subject to state community property laws than run-of-the-mill veterans disability benefits.

Recall that the reason appellant's benefits were reduced in the first place is that *Congress* determined that an incarcerated veteran should not be entitled to receive the full amount of his or her benefits during a period of felony incarceration exceeding 60 days.[78] Given that conscious congressional decision, it strains credulity to conclude that *Congress* would want a veteran in appellant's situation to be able to gain through community property principles a portion of the benefits *Congress* specifically has determined a person such as appellant should *not* receive. Indeed, I can think of no reason why Congress would make such a judgment, one that effectively undermines its own policy choice concerning incarcerated veterans. Congress simply would not have invited appellant in through a backdoor when it barred him from coming in through the front. And the majority provides absolutely no rationale to support why it concludes *Congress* did so other than to describe the state of the Fullers' marriage. But, again, there is no evidence that *Congress* made such highly fact-specific judgments that lead to Federal benefits being subject to state property law.

At oral argument, appellant's counsel attempted to explain why Congress might have made such a strange decision. Counsel relied on the principle that Congress would want to support military families.[79] I agree that Congress was interested in supporting military families when it enacted the rules concerning the apportionment of benefits withheld as a result of a veteran's incarceration. But I fail to see how allowing an incarcerated veteran to take half of those apportioned benefits going to his or her family in a community property division advances the laudable policy goal of supporting the family. It would not, and would, in fact, do exactly the opposite. And as I noted above, the fact that we are not dealing with a division here is irrelevant because the majority provides no support for the notion that community property principles apply now but cease to be relevant upon a marital dissolution. In any event, the family support rationale only underscores why there is nothing about apportioned benefits that alters the general rule that veterans disability benefits are not subject to state community property laws.

---

[78] *See* R. at 2606; *see also* 38 U.S.C. § 5313.

[79] *See* Oral Argument at 22:00-23:30.

### E. The majority's decision has serious negative implications for veterans.

There is no question that Mr. Fuller–a veteran–prevails under the Court's decision in this appeal. That may, to some, seem the most important thing. And the majority seeks to limit its rule essentially to the narrow facts it sees as being present here. However, I fear that the majority's rationale that leads to *this* veteran's legal victory sows the seed for *most* veterans to suffer legal defeats in far more common situations. As I discussed above, the Supreme Court in *Howell* and *Mansell* concluded that Congress did not intend that state law community property principles would apply to veterans disability benefits.[80] The reason was simple: Congress did not want a veteran to lose a portion of benefits associated with his or her personal service in defense of the Nation due to the vagaries of state law. But the Court's decision today effectively means that a veteran will lose a half of his or her benefits in the most overwhelmingly common situation in which community property principles come into play, a marital dissolution. And those benefits could be subject to their spouse's creditors. So, despite the majority's attempt to cabin its reasoning, the practical impact of today's decision (assuming our sisters and brothers on the bench in states with community property laws follow the majority's logic, and I very much hope they do not) is that veterans will suffer a loss of benefits that Congress did not intend. There simply is no principled way to say that Mr. Fuller has an interest here in his wife's benefits but that his wife (for example) would not have an interest in his benefits under community property principles should there be a need to divide property. That result suggests to me that the majority must be wrong, reinforcing the legal points I've made in this dissent.[81]

I also note that Congress is not heartlessly focused only on a veteran's interest to the exclusion of everything else. It has provided means by which a divorced spouse may obtain a portion of a veteran's benefits after a divorce.[82] And such provisions have an important substantive aspect to them here. They show that Congress did not rely on *state* law to make an appropriate division of veterans disability benefits. It did so as a matter of *Federal* law. Today's decision does not accord sufficient respect to this congressional judgment, adding yet another reason why I

---

[80] *See* Section III.B., *supra*. As I explained above, the fact that those cases happened to deal with disability compensation in lieu of military retirement pay is a distinction without a difference. *Id*.

[81] I fully recognize that policy-based arguments cannot trump positive law. However, the fact that, as a policy matter, the result of today's decision is at odds with congressional support of veterans more generally is a useful check on the result the majority reaches.

[82] 38 U.S.C. § 5307; *see Batcher v. Wilkie*, 975 F.3d 1333, 1335 (Fed. Cir. 2020).

dissent. And the existence of this statute also underscores what is missing from the majority's rationale: any indication that *Congress* made the choice the majority identifies.

## IV. CONCLUSION

In the end, the majority's conclusion that Mr. Fuller has a legally cognizable interest in his wife's apportioned benefits (1) inappropriately expands the class of persons that Congress determined may appeal an initial VA decision to the Board; (2) ignores persuasive (if non-binding) reasoning from the Federal Circuit; (3) is inconsistent with the congressional design of the veterans disability benefits system generally; (4) is at odds with guidance from the Supreme Court of the United States; and (5) is significantly unfavorable to veterans as a practical matter. As a result, I respectfully dissent from the majority's conclusion that appellant may pursue this appeal or was entitled to present an appeal to the Board below. I would vacate the Board's decision and remand with instructions for the Board to dismiss appellant's appeal.